CHARLES CARREON (CSB # 127139)
ONLINE MEDIA LAW, PLLC
1131 Barrington Circle
Ashland, Oregon 97520
Tel: 541/482-2321
Fax: 541/482-4683

Attorneys for Plaintiffs
Global Innovations, Inc. and Ramsey Lamerson

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| GLOBAL INNOVATIONS, INC, a Maryland corporation, and RAMSEY LAMERSON, an individual,<br><br>Plaintiffs,<br><br>vs.<br><br>ALS Scan, Inc., a Maryland corporation, WAYNE KIRN, an individual, APIC WORLD-WIDE, INC., a Florida corporation, and STEVE EASTON, an individual,<br><br>Defendants. | Case No.: _____<br><br>COMPLAINT FOR DECLARATORY RELIEF, DAMAGES, AND INJUNCTIVE RELIEF; JURY DEMAND |

Jurisdiction and Venue

1. This Court has exclusive subject matter jurisdiction of this matter, pursuant to 28 U.S.C. § 1331, because claims alleged herein arise under the laws and Constitution of the United States. This court has pendent jurisdiction of claims alleged under the law of the State of California.

2. This Court has personal jurisdiction over the defendants, and venue is proper in this District, because defendants engage in substantial business transactions in the State of California sufficient to establish minimum contacts with the forum state, and the acts and

1
_____
COMPLAINT FOR DECLARATORY RELIEF, DAMAGES, AND INJUNCTIVE RELIEF; JURY DEMAND

threatened acts of defendants directly affect the business interests of plaintiffs in the State of California, all as further alleged below.

## Parties

3. The plaintiffs are Global Innovations, Inc. ("Global") and Ramsey Lamerson ("Lamerson"), referred to jointly herein sometimes as "plaintiffs". Global is a corporation incorporated in the State of Maryland, operating in the State of California as an Internet service provider ("ISP") as defined by 17 U.S.C. § 512 of the recently-adopted Digitial Millennium Copyright Act (the "DMCA"). Global is a leading network service provider, offering IP transit, transport, and colocation services throughout North America. Using hardware and software resident in the State of California, Global supplies Internet connectivity to many large corporations that in turn service thousands of Internet users, such that the acts of defendants against Global alleged herein have a substantial impact in California. Global's primary Internet domain name address is Globali.net. In order for Global to provide Internet services, it has been assigned Internet Protocol addresses ("IP addresses") by ARIN (acronym for "American Registry of Internet Numbers"), a non-profit organization that controls the ordered allocation of IP resources, and operates a website at ARIN.net. Lamerson is the primary shareholder of Global.

4. Defendant ALS Scan, Inc. ("ALS") is a Maryland corporation that is in the business of selling adult imagery through websites operated at ALSScan.com. ALS markets and sells website services and digital content in the State of California and engages in numerous other commercial transactions with companies and individuals domiciled in the State of California. Defendant Wayne Kirn ("Kirn") is the primary shareholder of ALS. Defendants ALS and Kirn have pervasively engaged in business in the State of California. ALS is the corporate alter-ego of Kirn, and has become the vehicle for Kirn to project his personal animus toward plaintiffs, such that all corporate acts of ALS alleged herein are the personal acts of Kirn.

COMPLAINT FOR DECLARATORY RELIEF, DAMAGES, AND INJUNCTIVE RELIEF; JURY DEMAND

5. Defendant APIC World-Wide ("APIC"), on information and belief, is a Florida corporation operating websites at APIC-Worldwide.com and A-W.org, engaged in the business of locating and pursuing alleged copyright infringements on the Internet. APIC sells "memberships" to owners of intellectual property, and purports to replace attorney services on behalf of these members by pursuing anti-infringement legal activity in a "non-attorney" status. Defendant Steve Easton ("Easton"), on information and belief, is a shareholder, director and/or officer of APIC, and a resident of the State of Florida. APIC has pervasively engaged in business in the State of California.

FIRST CLAIM FOR RELIEF AGAINST ALL DEFENDANTS

DECLARATORY RELIEF UNDER 28 U.S.C. § 2201

6. Plaintiffs incorporate by reference each and every allegation herein as if set forth in full hereat.

7. ALS, Kirn, APIC, and Easton contend the following:

   a. That plaintiffs are responsible as copyright infringers under 17 U.S.C. § 501 and related law;

   b. That plaintiffs and other ISP's are engaged in acts of civil racketeering that expose them to liability under 18 U.S.C. § 1961, et seq., by refusing to alter their business practices in a manner desired by ALS;

   c. That notwithstanding Global's assistance of ALS in its efforts to disable Internet access to digital images that ALS claims are infringing, that Global does not qualify for the liability safe-harbor provided for ISPs under 17 U.S.C. § 512;

   d. That, in an effort to coerce plaintiffs to alter their business activities, ALS may "apply pressure" to Global's upstream vendors of Internet circuits to "cut off" Global's access to the Internet circuits that Global resells to downstream ISPs and other Internet businesses;

   e. That, in an effort to coerce plaintiffs to alter their business activities, ALS may contact the American Registry of Internet Numbers ("ARIN") in an effort to have

       ARIN revoke Global's use of IP addresses that are necessary to Global's provision of Internet services;

  f. That APIC and Easton are lawful agents to email notices of claimed infringements pursuant to 17 U.S.C. § 512 ("DMCA Notices");

  g. That the DMCA Notices emailed by APIC and Easton are lawfully provided and compel a response from plaintiffs;

  h. That plaintiffs are the proper parties to receive DMCA notices concerning infringements of ALS content;

  i. That APIC and Easton are permitted to engage in offensive, abusive, and threatening communications with Global's customers in an effort to compel Global and its customers to alter their business practices;

  j. That Lamerson's parents are subject to suit, and their property subject to seizure under 18 U.S.C. § 1961, et seq., as co-conspirators in a purported racketeering conspiracy with plaintiffs.

8. With respect to each of ALS's contentions set forth above, plaintiff's contend:

  a. That plaintiffs have not committed acts of copyright infringement;

  b. That plaintiffs have committed no unlawful acts cognizable as civil racketeering under 18 U.S.C. § 1961, et seq.;

  c. That plaintiffs qualify for the liability safe-harbor provided for ISPs under Section 512 of the DMCA, and that threats to impose liability upon plaintiffs notwithstanding the safe-harbor are illegitimate;

  d. That ALS is not permitted to "apply pressure" to Global's upstream vendors of Internet circuits to induce them to "cut off" Global's access to the Internet circuits that Global resells to downstream ISPs and other Internet businesses, and that such practices are unlawful;

  e. That ALS is not permitted to contact ARIN in an effort to revoke Global's use of IP addresses that are necessary to Global's provision of Internet services;

COMPLAINT FOR DECLARATORY RELIEF, DAMAGES, AND INJUNCTIVE RELIEF; JURY DEMAND

f. That APIC and Easton are practicing law without a license in the State of California in violation of California Business & Professions Code § 6125 when they purport to represent copyright owners, prepare correspondence, and send out DMCA Notices;

g. That the DMCA Notices emailed by APIC and Easton are not lawfully provided and require no response from plaintiffs;

h. That plaintiffs are not the proper parties to receive DMCA notices concerning infringements of ALS content on websites where the only connection with Global is that the websites are hosted using bandwidth provided by Global;

i. That APIC and Easton are not privileged to engage in offensive, abusive, and threatening communications with Global's customers in an effort to compel Global's customers to alter their business practices; and,

j. That all assertions of liability against Lamerson's parents under 18 U.S.C. § 1961, et seq., or any other provision of law are not only meritless, but entirely without a colorable basis in law or fact, and are extortionistic, unlawful threats themselves actionable as racketeering.

9. An actual controversy exists, presenting for resolution issues of first impression concerning operation of the safe-harbor provisions of Section 512 of the DMCA, that should be resolved by declaratory judgment. The conduct of defendants, also poses a continuing risk that threats of extrajudicial action made by ALS and Kirn, as further alleged below, will cause further additional damage to Global's business interests and Lamerson's family relations. Wherefore, a declaration of the rights and liabilities of all parties is hereby requested, as set forth more fully in the prayer for relief hereinbelow.

SECOND CLAIM FOR RELIEF, BY GLOBAL, AGAINST ALL DEFENDANTS,
<u>INTENTIONAL INTEREFERENCE WITH PROSPECTIVE BUSINESS ADVANTAGE</u>

10. Plaintiffs incorporate by reference each and every allegation herein as if set forth in full hereat.

COMPLAINT FOR DECLARATORY RELIEF, DAMAGES, AND INJUNCTIVE RELIEF; JURY DEMAND

11. ALS and Kirn, through their authorized agent and attorney Robert Lombardo, have declared the malicious intent to destroy the financial existence of Global, because it is their "number one enemy."

12. APIC and Easton have declared their malicious intent to destroy the financial well-being of at least one of Global's customers, sending an email accusing them of copyright infringement, and threatening them in writing with the statement, "Kiss your ass goodbye."

13. Global enjoys profitable business relations with its customers, including IBRH, Inc., CafWebhosting, and many others.

14. Defendants, and each of them, have contacted Global's customers and suppliers, and on information and belief, business associates of Global's customers, claiming that Global is involved in a conspiracy to infringe ALS copyrights, with the intent to cause those customers to end their business relationships with plaintiffs.

15. Due to the unlawful threats made by ALS, Kirn, APIC and Easton, Global has suffered a diminution in the monthly purchase of bandwidth by IBRH, Inc. and other customers, which damages will continue each month until judgment.

16. The acts of the defendants alleged in this claim for relief were fraudulent, malicious and oppressive, wherefore exemplary damages are proper.

### THIRD CLAIM FOR RELIEF, BY LAMERSON, AGAINST ALS AND KIRN
### INTENTIONAL INFLICTION OF EMOTIONAL DISTRESS

17. Plaintiffs incorporate by reference each and every allegation herein as if set forth in full hereat.

18. As previously alleged, ALS and Kirn harbor a malicious intent to cause financial injury to Global. ALS and Kirn further harbor the malicious intent to cause extreme emotional distress to Lamerson.

19. In furtherance of that malicious intent to cause emotional distress, ALS and Kirn engaged in the outrageous acts alleged hereinbelow.

COMPLAINT FOR DECLARATORY RELIEF, DAMAGES, AND INJUNCTIVE RELIEF; JURY DEMAND

20. On or about March 20, 2003, ALS and Kirn, acting through the agency of house counsel Robert Lombardo, who had previously been advised in writing that Global and Lamerson were represented by legal counsel, contacted Lamerson by telephone at the home of his parents. Lombardo's expressed intention was to contact Lamerson's parents.

21. Shortly thereafter, Lombardo spoke to Lamerson's counsel and stated that ALS and Kirn would soon be filing suit against Lamerson's parents for conspiring in racketeering activity, stating that legal grounds for such claims arose from the fact that Global had originally incorporated listing the address that is now the home of Lamerson's parents as the address of incorporation. On behalf of ALS and Kirn, Lombardo also disclosed the intention to obtain and impose a crushing judgment lien on the home of Lamerson's parents, to execute on that lien, and to deprive them of their home thereby. Lombardo insisted that Lamerson's counsel should communicate this threat directly to Lamerson's parents, and reiterated a previous threat to continue litigation through the appellate level, and even to the United States Supreme Court, if necessary to accomplish the goals of his clients, Kirn and ALS.

22. Lamerson's parents have no association with Global, and the sole purpose of the threat Lombardo communicated on behalf of ALS and Kirn was to cause emotional distress. Such conduct was extreme and outrageous conduct, calculated to cause extreme emotional distress.

23. Lamerson has suffered extreme emotional distress in the form of worry, fear, anxiety and embarrassment over the threatened lawsuit against his parents, and the expense they might be forced to incur in defending against frivolous litigation over business activities with which they are in no way connected. Such emotional distress has continued since the time the threats were made and will not subside until the threats are eliminated.

24. The acts of the defendants alleged in this claim for relief were fraudulent, malicious and oppressive, wherefore exemplary damages are proper.

///

///

FOURTH CLAIM FOR RELIEF OF GLOBAL, AGAINST APIC AND EASTON

<u>VIOLATIONS OF B. & P. CODE § 17200, ET SEQ.</u>

<u>(FALSE ADVERTISING, PRACTICING LAW WITHOUT A LICENSE, AND</u>

<u>OPERATING AN UNLAWFUL REFERRAL SERVICE FOR ATTORNEYS)</u>

25. Plaintiffs incorporate by reference each and every allegation herein as if set forth in full hereat.

26. Global brings this action for injunctive relief, damages and restitution on its own behalf and on behalf of the public in general, pursuant to California Business and Professions Code § 17200, *et seq.*

27. California Business and Professions Code §17200, *et seq*. prohibits acts of unfair competition, which mean, and include, any "fraudulent business act or practice." Conduct which is "likely to deceive" is "fraudulent" within the meaning of Section 17200.

28. On the APIC websites identified above, APIC offers to engage in the practice of law without a license in violation of B. & P. Code § 6126.

29. APIC offers intellectual property legal services that can actually be provided only by attorneys licensed to practice in the State of California. These statements are made in a manner likely to deceive, constituting a fraudulent business act or practice. In particular, the website offers various levels of "membership," described as follows:

    a. "General Membership: APIC WORLWIDE will act on your behalf (non-attorney) online ... in any copyright - trademark dispute up until legal action is necessary, at which time you may also be eligible for the finest legal representation at reduced member rates. $250 per annum.

    b. Rights of Publicity Membership: Rights of Publicity Membership is the entry level membership for models, actors and celebrities concerned with Rights of Publicity issues. APIC WORLWIDE will act on your behalf (non-attorney) online once a calendar month in any Rights of Publicity dispute up until legal action is necessary, at which time you may also be eligible for the finest legal representation at reduced member rates. $250 per annum

    c.  Blue Ribbon Membership: Blue Ribbon Membership is for photographers, producers, distributors of images, video, literature or other intellectual property that is or may be abused by other websites or usenet. Blue Ribbon Membership is also for members who own more than five separate domains. Blue Ribbon Members are entitled for APIC WORLDWIDE to act on their behalf in up to 5 online cases per month, all General Membership amenities and a listing on our suppliers pages as well.  $500 per annum

    d.  Rights of Publicity Plus Membership is for models, actors and celebrities who have to deal with frequent Rights of Publicity issues. APIC WORLWIDE will act on your behalf (non-attorney) online five times each calendar month in any Rights of Publicity dispute up until legal action is necessary.  $500 per annum

    e.  Gold Membership:  Recommended to photographers, producers, distributors and websites that experience a higher volume of infringement. APIC WORLDWIDE will act on behalf of Gold Members online up to 10 cases per month. Membership at the Gold level entitles you to and a banner link on the public side of the APIC WORLDWIDE website in one of our banner rotation spots. $1,000 per annum

    f.  Platinum Membership:  If you are a major producer of photographs, motion picture, video, music or any form of costly protected intellectual property, your legal fees for protecting your rights can be in excess of $100,000 per year and upwards. APIC WORLDWIDE has helped companies save tens of thousands of dollars by using our expert investigative and infringement handling procedures to stop Internet theft. Platinum Members receive the enhanced attention of APIC WORLDWIDE'S team and will act on your behalf for up to 25 individual cases per month until solved or legal action is necessary. All of our communications are copied to our legal counsel and you.  $2,500 per annum.

30. The foregoing statements disseminated in the State of California by APIC and Easton constitute an offer and proposal to perform services in California, as part of a plan that APIC and Easton, in the exercise of reasonable care, should have known they could not

COMPLAINT FOR DECLARATORY RELIEF, DAMAGES, AND INJUNCTIVE RELIEF; JURY DEMAND

perform as promised. Such statements made in violation of Cal. B. & P. Code § 17500 are false and misleading in the following particulars:

    a. APIC and Easton mislead consumers by advertising that they will act in a "copyright-trademark dispute up until legal action is necessary," because all action thus taken is necessarily legal action that can only be lawfully taken by an attorney;

    b. APIC and Easton mislead consumers by advertising that "members" can obtain "the finest legal representation at reduced members rates," because they are not attorneys, and therefore are unable to refer cases to attorneys in exchange for any consideration;

    c. APIC and Easton mislead consumers by advertising that they can act on behalf of "models, actors and celebrities ... in any Rights of Publicity dispute up until legal action is necessary," because all action thus taken is necessarily legal action that can only be lawfully pursued by an attorney;

    d. APIC and Easton mislead consumers by comparing the "expert investigative and infringement handling procedures to stop Internet theft" that they purport to offer with "legal fees for protecting your rights [costing] in excess of $100,000 per year and upwards," and in suggesting that they have the ability to "handle ... up to 25 individual cases per month" when they are not lawfully permitted to handle any "cases" at all;

    e. APIC and Easton mislead consumers by claiming to copy member communications to "our legal counsel," because APIC has no in-house legal counsel, nor is APIC able to have partnership of employment relations with attorneys, being only a Florida for-profit corporation.

31. APIC misleads consumers by claiming to be a "non-profit corporation," when in reality it is a Florida for-profit corporation, according to records on file with the Florida Secretary of State.

COMPLAINT FOR DECLARATORY RELIEF, DAMAGES, AND INJUNCTIVE RELIEF; JURY DEMAND

32. In addition to the specifically misleading statements set forth above, APIC's advertising tone and approach is misleading, because Internet copyright and trademark law is an emerging subspecialty of intellectual property law in which legal issues are largely unsettled, and in which the skilled assistance of counsel admitted to practice before the Bar is essential both to stimulate the ordered development of the law for the benefit of the public, and to obtain satisfactory results for individual clients.  By conveying the impression that it has formulated "expert procedures to stop Internet theft," APIC misleads consumers into believing that some institution other than the U.S. Copyright Office, the U.S. Patent and Trademark Office, and the Courts of the United States provides better protection at lesser cost for the holders of intellectual property rights, all of which is untrue.

33. California Business and Professions Code §17200, *et seq.* prohibits acts of unfair competition, which mean and include any "unfair ... business act or practice."

34. As more fully described hereinbelow, defendant's acts and practices constitute unfair business acts or practices within the meaning of Business and Professions Code §17200, *et seq.*, in that the justification for defendant's conduct, if any, is outweighed by the harm to the general public. Such conduct is also contrary to public policy, immoral, unethical, oppressive, unscrupulous and/or substantially injurious to consumers. Such conduct is ongoing and continues to this date.

35. APIC and Easton not only advertise that they are capable of performing legal services, they attempt to do so by, inter alia, emailing purported DMCA notices of infringement to alleged infringers, and supplementing these notices with heckling and abusive email correspondence that would never emanate from the office of an ethical attorney.  With such frequency as to constitute a business practice, APIC and Easton threaten to file suit on behalf of their "members" without specific authorization to make such threats, knowing that the "member" has not retained, and is unlikely to retain, an attorney to file suit against the target of the litigation threat.  APIC and Easton also frequently email inflammatory messages to their members and to attorneys in an effort to instigate

COMPLAINT FOR DECLARATORY RELIEF, DAMAGES, AND INJUNCTIVE RELIEF; JURY DEMAND

litigation. Such acts are violations of B. & P. Code § 6126, constituting the unlawful practice of law.

36. On various occasions, sufficiently often to constitute a business practice, APIC violates the terms of the DMCA by sending notifications when material is not actually infringing, by claiming to be an agent for the copyright holder when no such authorization has been obtained, by failing to provide DMCA notices with the required averments under penalty of perjury, and by failing to sign DMCA notices with an electronic or paper signature under penalty of perjury as required by 17 U.S.C. § 512(c)(3).

37. By instigating litigation, and collecting funds from "members" who are then referred to attorneys for representation, APIC engages in "capping," a crime under B. & P. Code §§ 6152-6153.

38. By the above-alleged conduct, APIC and Easton, out-of-state laypersons, compete unfairly with attorneys in the State of California, who are required to obtain and maintain lawful licenses for the practice of law, to comply with rules of professional conduct, to refrain from conduct similar to that engaged in by APIC and Easton, and to act at all times in accordance with the laws of the State of California and the United States.

39. The conduct of APIC and Easton undermines the public interest of attorneys and the public in general by: charging what are essentially legal fees for services that are valueless or not of the quality represented; encouraging persons with legal problems to rely upon resources other than the law to resolve their disputes; creating the impression that intellectual property law can be practiced by amateurs; collecting funds that should properly be spent on court costs and legal fees in pursuit of results that APIC and Easton cannot provide; and, otherwise damaging the decorous and proper conduct of the practice of law.

40. The foregoing acts of false advertising, unfair business competition, and violations of law are continuing to cause damage to plaintiffs and the public at large.

COMPLAINT FOR DECLARATORY RELIEF, DAMAGES, AND INJUNCTIVE RELIEF; JURY DEMAND

41. Plaintiffs and the public at large have no adequate remedy at law to prevent these continuing violations, and accordingly seek injunctive relief pursuant to Cal. B. & P. Code § 17203.

42. APIC and Easton have acquired funds by means of their unfair business practices and false advertising that are subject to disgorgement under §§ 17203 and 17535.

43. Wherefore, plaintiff and members of the general public are therefore entitled to the relief prayed below.

PRAYER FOR RELIEF

WHEREFORE, plaintiff prays for judgment against defendants as follows:

1. On the First Claim for Relief:

    For a declaration of the rights and liabilities of the parties, establishing that:

    a. That plaintiffs have not committed acts of copyright infringement;

    b. That plaintiffs have committed no unlawful acts cognizable as civil racketeering under 18 U.S.C. § 1961, et seq.;

    c. That plaintiffs qualify for the liability safe-harbor provided for ISPs under Section 512 of the DMCA, and that threats to impose liability upon plaintiffs notwithstanding the safe-harbor are illegitimate;

    d. That ALS is not permitted to "apply pressure" to Global's upstream vendors of Internet circuits to induce them to "cut off" Global's access to the Internet circuits that Global resells to downstream ISPs and other Internet businesses, and that such practices are unlawful;

    e. That ALS is not permitted to contact ARIN in an effort to revoke Global's use of IP addresses that are necessary to Global's provision of Internet services;

    f. That APIC and Easton are practicing law without a license in the State of California in violation of California Business & Professions Code § 6125 when they purport to represent copyright owners, prepare correspondence, and send out DMCA Notices;

COMPLAINT FOR DECLARATORY RELIEF, DAMAGES, AND INJUNCTIVE RELIEF; JURY DEMAND

g. That the DMCA Notices emailed by APIC and Easton are not lawfully provided and require no response from plaintiffs;

h. That plaintiffs are not the proper parties to receive DMCA notices concerning infringements of ALS content on websites where the only connection with Global is that the websites are hosted using bandwidth provided by Global;

i. That APIC and Easton are not privileged to engage in offensive, abusive, and threatening communications with Global's customers in an effort to compel Global's customers to alter their business practices; and,

j. That all assertions of liability against Lamerson's parents under 18 U.S.C. § 1961, et seq., or any other provision of law are not only meritless, but entirely without a colorable basis in law or fact, and are extortionistic, unlawful threats themselves actionable as racketeering.

2. On the Second Claim for Relief, for compensatory and exemplary damages against ALS and Kirn according to proof.

3. On the Third Claim for Relief, for compensatory and exemplary damages against ALS and Kirn according to proof.

4. On the Fourth Claim for Relief, for injunctive relief barring APIC and Easton from engaging in deceptive advertising of any sort, from representing themselves as capable of performing legal services, from engaging in the unlawful practice of law, from engaging in the proscribed activity of "capping," and ordering the said defendants to disgorge all financial gains procured through the dissemination of deceptive, misleading advertising, and the commission of unfair business practices.

5. On all Claims for Relief, for costs, disbursements, and prejudgment interest as permitted by law, and for such other and further relief as the Court deems just.

Dated: March 25, 2003           ONLINE MEDIA LAW, PLLC


By: _____
    CHARLES CARREON, CSB #127139
    Attorney for Plaintiffs

COMPLAINT FOR DECLARATORY RELIEF, DAMAGES, AND INJUNCTIVE RELIEF; JURY DEMAND

## JURY DEMAND

Pursuant to F.R.C.P. 38, plaintiffs respectfully demand a jury trial as to every issue triable of right by a jury.

Dated:  April 22, 2003        ONLINE MEDIA LAW, PLLC


By: _____
    CHARLES CARREON, CSB #127139
    Attorney for Plaintiffs

COMPLAINT FOR DECLARATORY RELIEF, DAMAGES, AND INJUNCTIVE RELIEF; JURY DEMAND