OWEN SEITEL (SBN 137365)
RICHARD J. IDELL (SBN 069033)
IDELL, BERMAN & SEITEL
465 California Street, Suite 300
San Francisco, CA 94104
Telephone: (415) 986-2400
Facsimile: (415) 392-9259

Attorneys for Defendants
ALS SCAN, INC., ALEX KIRN,
APIC WORLD-WIDE, INC. and
STEVE EASTON

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| GLOBAL INNOVATIONS, INC., a Maryland corporation, and RAMSEY LAMERSON, an individual,<br><br>　　　　　Plaintiff,<br><br>　vs.<br><br>ALS Scan, Inc., a Maryland corporation, WAYNE KIRN, an individual, APIC WORLD-WIDE, INC., a Florida corporation and STEVE EASTON, an individual,<br><br>　　　　　Defendants. | Case No.: C03-1277 JSW<br><br>**DECLARATION OF ROBERT L. LOMBARDO IN SUPPORT OF MOTION TO DISMISS FOR LACK OF PERSONAL JURISDICTION (FRCP 12(b)(2)); OR IN THE ALTERNATIVE TO DISMISS PURSUANT TO THE COURT'S DISCRETION UNDER 28 U.S.C. §2201; OR IN THE ALTERNATIVE TO TRANSFER FOR CONVENIENCE (28 USC §1404(a))**<br><br>Date:  August 1, 2003<br>Time:  9:00 a.m.<br>Courtroom: 2, 17th Floor<br>Honorable Judge Jeffrey S. White, presiding |

I, Robert L. Lombardo, do state as follows under penalty of perjury:

1.　　I am an attorney for Defendant ALS SCAN, INC. ("ALS"), a Maryland corporation and I have personal knowledge all matters stated herein.  If called as a witness, I could testify competently regarding the matters stated.

1

DECLARATION OF ROBERT L. LOMBARDO IN SUPPORT OF MOTION TO DISMISS FOR LACK OF PERSONAL JURISDICTION (FRCP 12(b)(2)); OR IN THE ALTERNATIVE TO DISMISS PURSUANT TO THE COURT'S DISCRETION UNDER 28 U.S.C. §2201; OR IN THE ALTERNATIVE TO TRANSFER FOR CONVENIENCE (28 USC §1404(a))
Case No. C03-1277 JSW

2. I am licensed to practice before all courts in the state of Maryland and in the District of Columbia.

3. I was in-house counsel for ALS from October, 2000 until April 2002; at which time I opened my own law practice in Silver Spring, Maryland.

4. As part of my duties as in-house counsel for ALS, I oversaw the registering of copyrights with the United States Copyright Office. ALS currently has over 100 Certificates of Registration that have been issued by the Copyright Office. Those copyrights, which much time and expense have gone into producing, are vigorously protected by ALS.

5. Continuously scanning the Worldwide Web for violations of ALS copyrights is a sizeable task requiring constant vigilance. In its effort to police the unauthorized use of its copyrighted materials, ALS typically has at least one of its employees in charge of searching for infringements and contacting infringers, typically via cease and desist letters. In light of the size of the task, ALS often requested that I also get involved in efforts to enforce its copyrights. In addition to an ALS employee and myself, ALS often utilized the services of APIC (the Association for the Protection of Internet Copyrights). APIC is an organization that provides its members with the service of scanning the Internet for the unauthorized use of its members copyrighted materials, notifying members of infringements and sending cease and desist letters pursuant to the Digital Millennium Copyright Act (DMCA) on behalf of its members.

6. ALS also goes to great lengths in an attempt to ensure that minors do not gain access to its adult websites and/or images. I, personally, spent a good deal of time and effort working with ALS to make it as difficult as possible for a minor to gain access to the images "inside" ALS's websites.

7. I first became aware of Global Innovations, Inc. ("Global") in July of 2001. At that time, I was aware that Global owed and operated two websites, www.pornblocks.com and www.sexblocks.com, that were copying and displaying ALS's copyrighted images and using ALS trademark to draw Internet traffic to the websites. Not only were these two sites blatantly violating ALS's copyrights and trademarks but, more seriously, they were displaying the images without controls. In other words, anyone, including children, had access to the adult images. I sent a cease and desist to Verio, Inc., the Internet Service Provider ("ISP") for the site, as well as to the "legal" departments of

2

DECLARATION OF ROBERT L. LOMBARDO IN SUPPORT OF MOTION TO DISMISS FOR LACK OF PERSONAL JURISDICTION (FRCP 12(b)(2)); OR IN THE ALTERNATIVE TO DISMISS PURSUANT TO THE COURT'S DISCRETION UNDER 28 U.S.C. §2201; OR IN THE ALTERNATIVE TO TRANSFER FOR CONVENIENCE (28 USC §1404(a))
Case No. C03-1277 JSW

both Global and Pornblocks. All the images were promptly removed and, therefore, no further action was taken by ALS.

8. I had no further dealings with Global until January of 2003, when I was contacted by Steve Easton of APIC to discuss the massive amount of copyright infringement taking place on Global's system. It was obvious that a handful of websites were violating hundreds of ALS's copyrights on a daily basis. All the violating websites appeared to be registered to either a "Caf Webhosting and Technology" in Canada or to "IBRH" in California. However, both of these entities used false information to register their web sites.

9. Mr. Easton had sent hundreds of cease and desist notices to Global, "Caf Webhosting and Technology" and "IBRH." In almost every case, the copyrighted images would be removed but would be replaced shortly with other copyrighted images. Therefore, Mr. Easton asked me to contact a Ramsey Lamerson, who he understood to be Global's attorney. I also was forwarded an e-mail from Mr. Lamerson to ALS, in which the signature line read: "Ramsey Lamerson, Global Innovations, Inc. Legal Department, Ph: 301-668-6350, Fx. 301-668-6224, Email: ramsey@globali.net."

10. When I telephoned Global's offices, I was automatically directed to the "legal department" and Mr. Lamerson answered. It became readily apparent that Mr. Lamerson was not an attorney. Rather, he claimed he was the Chief Executive Officer of Global. In any event, it was apparent that Lamerson/Global was a one-man operation.

11. Mr. Lamerson stated that his "clients," "Caf Webhosting and Technology" and "IBRH," always removed the copyrighted images promptly. Lamerson asserted that since Global was a "Service Provider" under the Digital Millennium Copyright Act ("DMCA") Global was entitled to a safe harbor from liability from the posting of infringing materials on Global's "system." He further stated that since his "client" removed the copyrighted images promptly, nothing more was required of Global.

12. Mr. Lamerson refused to give me the names of the contact persons for either of his "clients." I then asked him if I could speak to an attorney for Global because ALS would not tolerate the continued systematic violation of its copyrights on Global's system. Mr. Lamerson stated that he had a "bunch of lawyers on retainer" and would have one of them contact me shortly to discuss the matter.

3

DECLARATION OF ROBERT L. LOMBARDO IN SUPPORT OF MOTION TO DISMISS FOR LACK OF PERSONAL JURISDICTION (FRCP 12(b)(2)); OR IN THE ALTERNATIVE TO DISMISS PURSUANT TO THE COURT'S DISCRETION UNDER 28 U.S.C. §2201; OR IN THE ALTERNATIVE TO TRANSFER FOR CONVENIENCE (28 USC §1404(a))
Case No. C03-1277 JSW

13. I reported to the CEO of ALS, Alex Kirn, my concerns about Global and showed him examples of the massive amount of copyright infringement taking place on its system. He was concerned not only with the trademark and copyright infringement, but also with the fact that the images were available to anyone, including minors. I was directed to send a stern cease and desist letter and, then, if the copyright infringement continued, he authorized me to pursue legal action.

14. I coordinated with Amy LaPerle (See Declaration of Amy LaPerle) and she began the task of documenting the copyright violations occurring on Global's system and sending notices (pursuant to the Digital Millennium Copyright Act, 17 U.S.C. § 512(c)(3)) to Mr. Lamerson. By this time, hundreds of ALS's copyrighted images were being copied and displayed on Global's system daily.

15. Upon further investigation, I was able to piece together Mr. Lamerson's . Mr. Lamerson had registered many domain names and presented them as if they were separate entities, while in reality, he controlled all of them.

16. I discovered that Mr. Lamerson had registered the following domain names: bannerstat.net, globali.net, globalinnovations.net, shoutcasting.com, shoutcasting.net, pornblocks.net, pornblocks.com, adultbannerstat.net, adultbannerstat.com, motelhooker.com, eroticcelebs.com, quibba.net, quibba.com, porndistro.com, porndistro.net, bannerstats.com, sexblocks.com, clean-drive.com, clean-drive.net, sexblocks.net, peta-news.com, petanews.net, peta-news.net, and bannerstats.net.

17. Following my investigation and upon information and belief, I determined that Mr. Lamerson was using the appropriated images to generate significant Internet traffic to a particular page one of the Lamerson-controlled websites carried on the Global system. Upon receipt of a DMCA notice of infringing materials, the particular page would be taken down and the sizeable amount of traffic coming to that page thereafter (in the hope of seeing an image for free that they would otherwise have to pay for) would be redirected to an advertiser or sponsor, from whom Lamerson would receive payment for providing traffic. Therefore, for example, if Mr. Lamerson received a DMCA notice for his www.sexblocks.com website, he would respond from his support@sexblocks.com e-mail address stating that the infringing images had been removed. He would also respond from his ramsey@globali.net e-

4

DECLARATION OF ROBERT L. LOMBARDO IN SUPPORT OF MOTION TO DISMISS FOR LACK OF PERSONAL JURISDICTION (FRCP 12(b)(2)); OR IN THE ALTERNATIVE TO DISMISS PURSUANT TO THE COURT'S DISCRETION UNDER 28 U.S.C. §2201; OR IN THE ALTERNATIVE TO TRANSFER FOR CONVENIENCE (28 USC §1404(a))
Case No. C03-1277 JSW

mail address stating that the notice had been forwarded on to the "Sexblocks.com Legal Staff" and the issue had been resolved.

18. Quite simply, after substantial investigation and upon information and belief, Mr. Lamerson appropriates copyrighted images and trademarks of prominent adult producers in order to draw Internet "traffic" to his websites. Once he had the "traffic," he await receipt of the DMCA "take-down notice" and gladly re-direct it to advertisers or sponsors willing to pay him for that traffic.

19. Although, I understood the scheme, I was not sure I had the correct parties who were conspiring with Mr. Lamerson.

20. On February 11, 2003, I sent Mr. Lamerson an e-mail message demanding that he desist with the copyright infringement on Global's system or ALS would seek legal recourse. I also informed him that no attorney had contacted me on Global's behalf as he had earlier promised.

21. On or about February 18, 2003, I was contact by Charles Carreon who purported to be legal counsel for Ramsey Lamerson and Global Innovations, Inc. and we discussed the merits of the case by telephone. Mr. Carreon told me that he would talk to his clients and get back to me shortly. On February 20, 2003, I received a self-serving letter from Mr. Carreon, attached to an e-mail, which bore little relationship to our telephone conversation.

22. Mr. Carreon and I continued communicating in an effort to resolve the dispute but it soon became apparent that a solution could not be reached. I informed Mr. Carreon that I would be filing an action in the United Stated District Court for the District of Maryland. However, I would need some time to file the Complaint because the District Court had just mandated that all civil cases filed after March 3, 2003, be filed electronically and there was bound to be confusion upon implementation of the policy (See Introduction to Electronic Filing Requirements and Procedures found at http://www.mdd.uscourts.gov/CMECF/cmecfInfo.htm).

23. Mr. Carreon offered to accept service of process for both Global Innovations, Inc. and Ramsey Lamerson. Since I did not know Mr. Carreon, I asked that he put me in contact with the local counsel who would be handling the case in Maryland. Mr. Carreon assured me that he would in the near future, but, to date, has never done so. (Attached hereto as Exhibit A is a true and correct copy of a letter from Mr. Carreon, dated March 11, 2003, confirming his understanding that I would be filing an

5

DECLARATION OF ROBERT L. LOMBARDO IN SUPPORT OF MOTION TO DISMISS FOR LACK OF PERSONAL JURISDICTION (FRCP 12(b)(2)); OR IN THE ALTERNATIVE TO DISMISS PURSUANT TO THE COURT'S DISCRETION UNDER 28 U.S.C. §2201; OR IN THE ALTERNATIVE TO TRANSFER FOR CONVENIENCE (28 USC §1404(a))
Case No. C03-1277 JSW

action in Baltimore, Maryland, which now requires "e-filing" of civil cases and that he should provide me with the contact information of local counsel.)

24. Mr. Carreon also claimed to have no information about the person or persons behind "Caf Webhosting and Technology" and "IBRH." However, I was eventually able to determine that "Caf Webhosting and Technology" was owed and operated by a Christopher Fernandez, aka Ali Andreson, and "IBRH" was owed and operated by a Victor Allen Hannan, aka "John Galt." I also received information that Mr. Lamerson, Mr. Fernandez and Mr. Hannon had been communicating with Mr. Carreon in an attempt to secure representation. When I called Mr. Carreon to inquire as to whether or not he was indeed representing Mr. Fernandez and/or Mr. Hannan, he simply stated that "he would have to check and get back to me." He never got back to me.

25. Complicating my effort to file an accurate complaint, was the fact that Mr. Lamerson, in an attempt to hide his activities, registered an ISP using false information. Through the course of my investigation, I found that Lamerson had registered "Clean Drive Software," using the address of 1911 Gallows Road, Vienna VA 22182, under the name "Jason Matthews." There is no "Gallows Road" in Vienna, Virginia.

26. Although I had identified Global as the ISP on whose system the copyright infringement was taking place, the actual address of the company was difficult to discern. Global Innovations listed its principle office with the Maryland Department of Assessments and Taxation at 7313 D Grove Road, Frederick, MD. However, I could find no such address in Maryland. Eventually, I found that Mr. Lamerson had been sued for back rent by the landlord of 7313 Grove Road, Suite D, in the District Court of Maryland for Frederick County. That complaint listed Mr. Lamerson's address as 207 Deer Run Drive, Walkersville, Maryland. It also showed that Mr. Lamerson had another company, RAM-WAR, Inc., with an address of 5754 Windsong Court, Maryland. Finally, the Global Web site, www.globali.net, listed 4650 Wedgewood Blvd., Suite 107, Frederick, MD as the corporate offices for Global Innovations. The only address for which I could find any information on was the Walkersville, Maryland address and it was registered to a Clinton Lamerson. When I tried to contact Clinton Lamerson to determine if I had the correct address, I was told that he was not there and that he did not

6

DECLARATION OF ROBERT L. LOMBARDO IN SUPPORT OF MOTION TO
DISMISS FOR LACK OF PERSONAL JURISDICTION (FRCP 12(b)(2)); OR IN THE
ALTERNATIVE TO DISMISS PURSUANT TO THE COURT'S DISCRETION
UNDER 28 U.S.C. §2201; OR IN THE ALTERNATIVE TO TRANSFER FOR
CONVENIENCE (28 USC §1404(a)
Case No. C03-1277 JSW

want to speak to me. I then asked if I were talking to Ramsey Lamerson and I was told that I was. I immediately hung up the phone and called Mr. Carreon.

27. During the telephone conversation, Mr. Carreon and I engaged in a heated discussion on the merits of the case but Mr. Carreon's description of the conversation, as outlined in Paragraphs 21 of the Complaint and in Paragraphs 9 and 10 of the Declaration of Charles Carreon in Support of the Motion to Enjoin Prosecution of Compulsory Counterclaim as Separate Action, are inaccurate and misleading. Far from being worried, Mr. Carreon stated that he was pleased that negotiations had not proved successful because it allowed him to "bond with [his] clients and get more money out of them."

28. While I was finalizing the complaint and waiting to hear from Mr. Carreon on the contact information for local counsel and whether or not he was representing Mr. Fernandez and Mr. Hannon, Mr. Carreon filed his Complaint for Declaratory Relief on March 25, 2003. So worried was Mr. Carreon about "winning the race to the court house" that, instead of requesting that I accept service on behalf of ALS or Mr. Kirn, Mr. Carreon had both served two days later on March 27, 2003. I then had to search for and retain counsel for ALS and Mr. Kirn in California.

29. Eventually, I was able to confirm that Mr. Lamerson was living with his parents in Walkersville, Maryland and running his operation out of the family home. However, all the servers at issue in this case are located in Ashburn, Virginia, which is approximately 50 miles from both Lamerson and ALS.

30. On April 9, 2003, I filed a complaint for copyright and trademark infringement against Global Innovations, Inc., Ramsey Lamerson, Victor Hannan, Chris Fernandez, WilTel Communications, Equinix, Inc., and Does 1-10. I expect to amend the Complaint when the identities of the individuals become known through the discovery process. To date, only Mr. Hannan and Mr. Fernandez continue to evade service of process. (A true and correct copy of the Complaint filed in the Maryland District Court as action no. _____ is attached hereto as Exhibit ___).

31. It would be unreasonable to require ALS and Mr. Kirn to defend this action in courts within California for the following reasons:

   a. It would create a undue burden on ALS and Mr. Kirn to defend in this forum since ALS and all of its employees are located in Maryland and Kirn is a resident of Maryland;

7

DECLARATION OF ROBERT L. LOMBARDO IN SUPPORT OF MOTION TO DISMISS FOR LACK OF PERSONAL JURISDICTION (FRCP 12(b)(2)); OR IN THE ALTERNATIVE TO DISMISS PURSUANT TO THE COURT'S DISCRETION UNDER 28 U.S.C. §2201; OR IN THE ALTERNATIVE TO TRANSFER FOR CONVENIENCE (28 USC §1404(a))
Case No. C03-1277 JSW

I declare under penalty of perjury that the foregoing is true and correct.

Executed on June 20, 2003.

_____
Robert L. Lombardo

9

DECLARATION OF ROBERT L. LOMBARDO IN SUPPORT OF MOTION TO DISMISS FOR LACK OF PERSONAL JURISDICTION (FRCP 12(b)(2)); OR IN THE ALTERNATIVE TO DISMISS PURSUANT TO THE COURT'S DISCRETION UNDER 28 U.S.C. §2201; OR IN THE ALTERNATIVE TO TRANSFER FOR CONVENIENCE (28 USC §1404(a))
Case No. C03-1277 JSW