OWEN SEITEL (SBN 137365)
RICHARD J. IDELL (SBN 069033)
IDELL, BERMAN & SEITEL
465 California Street, Suite 300
San Francisco, CA 94104
Telephone: (415) 986-2400
Facsimile: (415) 392-9259

Attorneys for Defendants
ALS SCAN, INC., WAYNE KIRN,
APIC WORLD-WIDE, INC. and
STEVE EASTON

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| GLOBAL INNOVATIONS, INC., a Maryland corporation, and RAMSEY LAMERSON, an individual,<br><br>　　　　　Plaintiff,<br><br>　vs.<br><br>ALS Scan, Inc., a Maryland corporation, WAYNE KIRN, an individual, APIC WORLD-WIDE, INC., a Florida corporation and STEVE EASTON, an individual,<br><br>　　　　　Defendants. | Case No.: C03-1277 JSW<br><br>**OPPOSITION TO MOTION TO ENJOIN PROSECUTION OF COMPULSORY COUNTERCLAIM AS SEPARATE ACTION**<br><br>Date: August 1, 2003<br>Time: 9:00 a.m.<br>Courtroom 2, 17th Floor<br><br>Honorable Judge Jeffrey S. White presiding |

**TABLE OF CONTENTS**

I.    STATEMENT OF ISSUES:................................................................................................ 1

II.    SUMMARY OF ARGUMENT: .................................................................................... 1

III.    FACTS ............................................................................................................................ 2

  A.    The Parties. ................................................................................................................ 2

    1.    Defendants ALS Scan and Alex Kirn ................................................................. 2

    2.    The Plaintiffs, Ramsey Lamerson and Global Innovations, Inc. .................................. 3

  B.    The Negotiations ........................................................................................................ 4

  C.    The Instant Lawsuit (the "California Action") ............................................................ 7

  D.    The Action by ALS against Global Innovations et al. (the "Maryland Action") ....... 7

IV.    ARGUMENT: ................................................................................................................ 7

  A.    This Action Is An Inproper Anticipatory Litigation, Thus Defendants Claims In The Maryland Action Should Not Be Deemed A Compulsory Counterclaim.................................................. 8

  B.    Enjoining the Maryland Action in Strict Adherence to the First-to-File Rule Will Not Comprehensively Settle All Matters At Issue................................................................ 10

V.  CONCLUSION ................................................................................................................. 11

# TABLE OF AUTHORITIES

**Cases**

Amerada Petroleum Corp. v. Marshall, 381 F.2d 661, 663 (5th Cir. 1967) .............................. 13

American Auto. Ins. Co. v. Freundt, 103 F.2d 613, 619 (7th Cir.1939)...................................... 12

Budget Rent A Car Corp v. Miljack, Inc., 760 F Supp 135 (ND Ill 1991)......................... 12, 14

First Fishery Development Service, Inc. v. Lane Labs USA, Inc., 1997 WL 579165 (1997 U.S. Dist LEXIS 11231) (S.D.Cal. 1997) ................................................................................ 12

Great American Ins Co v. Houston General Ins Co., 735 F Supp 581 (SD N.Y.1990)............................ 12

Gribin v. Hammer Galleries, 793 F. Supp. 233, 234-35 (C.D. Cal. 1992) ........................................ 11, 13

Hanes Corp. v. Millard, 531 F.2d 585, 593 (D.C. Cir. 1976 ...................................................... 11

Koch Engineering Co, Inc v. Monsanto Co., 621 F Supp 1204 (ED MO 1985) ................................ 12, 14

Tempo Elec. Heater Corp. v. Omega Eng'g., Inc., 819 F.2d 746 (7th Cir.1987) ................................ 12, 13

Ven-Fuel. Inc. v. Department of the Treasury, 673 F .2d 1194, 1195 (11th Cir. 1982)...................... 11, 13

Ward v. Follett Corp., 158 F.R.D. 645, 648 (N.D. Cal. 1994) .................................................. 11

**Statutes**

28 U.S.C. §2201(a) ....................................................................................................... 13

**Rules**

F.R.C.P. Rule 13 ................................................................................................ 4, 11, 13

## I. STATEMENT OF ISSUES:

1. Is this declaratory relief action an improper anticipatory action in which the Court should disregard the "first-to-file" rule and strict adherence to F.R.C.P. Rule 13 in favor of the pending action in the Maryland District Court?

## II. SUMMARY OF ARGUMENT:

Although both Plaintiffs -- Global Innovations, Inc. ("Global") and Ramsey Lamerson ("Lamerson") -- and both of the Defendants opposing this motion -- ALS Scan, Inc. ("ALS") and Alex Kirn ("Kirn") -- reside and work a mere fifty miles apart in the State of Maryland, Plaintiffs hastily filed this declaratory relief action in California knowing that Defendants were about to file action in Maryland. None of the named parties in this action reside or work in the State of California.

Separately, and to be considered in conjunction with this motion, Defendants opposing this motion, ALS and Kirn, have filed a motion seeking dismissal, transfer or stay of this California Action on the grounds that this action is an improper anticipatory lawsuit, personal jurisdiction is lacking, this California Action is not a useful exercise of the Court's discretion to entertain declaratory relief actions and, on forum nonconveniens grounds (hereinafter the "Motion to Dismiss/Transfer). In the event the Court grants any of the requests contained in the Motion to Dismiss/Transfer, denial of Plaintiffs' present motion is logical. (Rather than provide duplicative supporting declarations to the Court with this Opposition, the declarations and attachments referred to herein are those on file in support of Defendants' Motion to Dismiss/Transfer, all of which are incorporated by reference into this Opposition.)

Plaintiffs' Motion to Enjoin Prosecution of the Maryland District Court action (the "Maryland Action") on the ground that the claims asserted there are compulsory counterclaims in this declaratory relief action (the "California Action") should be denied because this suit is an improper anticipatory action in which the "first-to-file" rule should not apply. Further, strict application of the "first-to-file" rule and F.R.C.P. Rule 13 in the present situation would not best serve the needs of the parties because a comprehensive solution to the entire controversy is available in the Maryland Action, not here. Plaintiffs' use of F.R.C.P. Rule 13 to further its improper actions should not be supported by the Court and this motion should be denied.

### III. FACTS

#### A. The Parties.

##### 1. Defendants ALS Scan and Alex Kirn

Defendant ALS is a Maryland corporation formed in 1996 with its only place of business in Columbia, Maryland (Declaration of Alex Kirn, hereinafter "Kirn Declaration"; ¶¶2-3). ALS is not incorporated, is not qualified to do business, has no subsidiaries or branch offices, no bank accounts, property, telephone listings or mailing addresses in California. ALS has no officers, directors, or employees residing or domiciled in California nor has it contracted with persons in California to act on its behalf with respect to marketing, distributing or servicing any of its goods, services, or products (Kirn Declaration, ¶6). ALS does not direct any of its advertising specifically toward California residents or businesses, nor does it advertise in any publications that are directed primarily toward California residents or businesses (Kirn Declaration, ¶9). None of ALS' employees have attended business conferences or similar functions within the state of California on behalf of ALS (Kirn Declaration, ¶10).

Defendant Alex Kirn is an individual resident of Ellicot City, Maryland and is the primary shareholder and CEO of ALS. Kirn has not visited the State of California for any reason whatsoever during the entire course of his adult life (Kirn Declaration, ¶11). ALS was served with this action at its corporate headquarters in Columbia, Maryland; Kirn was served at his home in Ellicot City, Maryland.

ALS is primarily engaged in the business of publishing a well known and successful adult website *http://www.alsscan.com* ("ALS Site") which receives two million unique visitors each month. The ALS Site is subscription based; consumers 21 years of age or older may purchase a subscription providing access to content on the ALS Site. Upon payment of a monthly fee and acceptance of ALS' terms of use, consumers are issued a password which allows them "inside" the ALS Site, where they may view thousands of ALS copyrighted photographs (Kirn Declaration, ¶¶12-15).

ALS invests substantial sums of money, time, effort and creative talent producing its copyrighted works for display to ALS subscribers (Kirn Declaration, ¶17). Over the years, ALS has built a valuable business and enviable reputation by reason of the distinct styling and quality of its original photographs

which are widely identified in the minds of the purchasing public with ALS (Kirn Declaration, ¶19). ALS also spends significant sums of money protecting its copyrighted materials (Kirn Declaration, ¶19). ALS currently has five full-time employees, all of whom work at ALS' Maryland office in the state of Maryland (Kirn Declaration, ¶20).

All of ALS' copyrighted images have a Certificate of Registration issued by the United States Copyright Office and contain ©, the name "ALS Scan" and the copyright year, or some other *indicia* of ALS' ownership (Kirn Declaration, ¶15). ALS is the owner of the valuable and well-known ALS SCAN trademark, under which its services are provided (Kirn Declaration, ¶16).

### 2. The Plaintiffs, Ramsey Lamerson and Global Innovations, Inc.

Ramsey Lamerson operates Global Innovations, Inc. from his parents' home in Walkersville, Maryland (Lombardo Declaration ¶30). Mr. Lamerson has registered many domain names and operates and presents them as if each was a separate legal entity. In reality, Lamerson controls all of them, either by himself or with cohorts. Among the domain names registered and controlled by Lamerson are: bannerstat.net, globali.net, globalinnovations.net, shoutcasting.com, shoutcasting.net, pornblocks.net, pornblocks.com, adultbannerstat.net, adultbannerstat.com, motelhooker.com, eroticcelebs.com, quibba.net, quibba.com, porndistro.com, porndistro.net, bannerstats.com, sexblocks.com, clean-drive.com, clean-drive.net, sexblocks.net, peta-news.com, petanews.net, peta-news.net, and bannerstats.net (Lombardo Declaration ¶10).

Mr. Lamerson's scam works as follows: Infringing adult images are posted on one of the Lamerson-controlled websites, free to view by anyone with access to the WorldWideWeb. Via the Internet, and with the assistance of Lamerson and his cohorts, word spreads with exponential speed that free adult images can be viewed at a particular URL[1]. Soon a large volume of traffic is coming to the particular Lamerson-controlled URL illegally displaying these copyrighted images. Eventually the copyright owner of these images learns of their unauthorized display, issues a Digital Millennium

---

[1] Uniform Resource Locator. A specific "Address" on the internet, e.g. www.findlaw.com/11stategov refers to a specific web page on the findlaw.com website.

Copyright Act ("DMCA") notice advising the listed website contact and its carrier that the site contains infringing images, and requests that the infringing website pages be terminated (commonly known as a DMCA "take-down notice") (Lombardo Declaration ¶12).[2]

In this scenario, Mr. Lamerson gladly receives these DMCA notices, shuts down the web pages with infringing images and redirects the large volume of traffic coming to that page to advertisers or sponsors willing to pay for traffic.  For example, a DMCA take-down notice would be sent by the owner or owner's agent relating to images illegally displayed on Lamerson's www.sexblocks.com website. Lamerson responds anonymously from support@sexblocks.com stating that the infringing images had been removed.  He would also respond from his ramsey@globali.net e-mail address stating that the take-down notice had been forwarded on to the "Sexblocks.com Legal Staff" and the issue had been resolved. The images on that specific URL, e.g. www.sexyblocks.com/terri/terri3.htm, would be removed and, thereafter, Lamerson "sells" the traffic going to that webpage to another party willing to pay for traffic. Under the assertion that his www.globali.net site is a "Service Provider," Lamerson claims the benefit of the safe harbor provision of the DMCA[3] to shield Global from liability for the online infringement of sexyblocks.com, which is carried by Global.

### B.     The Negotiations

ALS first became aware of Global in July of 2001.  At that time, ALS learned that Global owned and operated two websites, www.pornblocks.com and www.sexblocks.com, that were copying and displaying ALS' copyrighted images and using ALS trademark to draw Internet traffic to those websites. ALS' counsel sent a cease and desist letter to Verio, Inc., the Internet Service Provider ("ISP") for the sites, as well as to the "legal" departments of both Global and Pornblocks.  All the images were promptly removed and no further action was taken by ALS (Lombardo Declaration ¶6).

---

[2] Under the DMCA, pursuant to 17 U.S.C. §512(c)(3), when a copyright owner or agent thereof discovers infringing material on a service provider's service, it may send the provider a notice demanding the removal or blocking of that material.  If the provider posts an infringement policy, the notice is proper, and the provider promptly complies, the provider remains exempt from liability to the copyright owner.  In addition, the provider is then generally exempt from liability to the person who posted the material taken down or blocked.  Among other bases, a service provider is exempt from liability in the above scenario if the service provider is merely transmitting (is merely a conduit) the material posted on the provider's system by another.  This is commonly known as the Service Provider's "Safe Harbor" provision under the DMCA.

[3] 17 U.S.C. §623(c)

Lamerson and Global again came to the attention of ALS in January of 2003, when ALS was contacted by Defendant Steve Easton of APIC, a Florida-based organization ALS contracted with to assist in the online policing of its copyrights, and advised that a massive amount of copyright infringement of ALS' works was taking place on Global's system. At that time, a handful of websites carried by Global were violating hundreds of ALS' copyrights on a daily basis. Upon review it was determined that all these violating websites carried on Global's system used false information to register their web sites (Lombardo Declaration ¶7).

In February of 2003, two websites, www2.smuthosters.com and www.sexyfiber.com, were displaying hundreds of ALS' copyrighted photographs that had just recently been released in the "members" section of the ALS website. At the request of ALS, APIC sent out hundreds of cease and desist notices to Global, "CAF Webhosting and Technology" and "IBRH."[4] In almost every case, the URLs were removed and replaced shortly thereafter with different URLs on the same website displaying other copyrighted images. Alarmed by the extent of the copyright infringement, ALS' counsel, Robert Lombardo, was contacted by APIC and provided the contact information for Ramsey Lamerson, who APIC understood to be Global's attorney (Lombardo Declaration ¶13).[5]

In February, 2003, ALS' counsel, Robert Lombardo, telephoned Global's offices, was automatically directed to the "legal department," and Mr. Lamerson answered. In the course of this conversation, it became readily apparent that Mr. Lamerson was not an attorney and that Global was a "one-man" operation (Lombardo Declaration ¶14).

Mr. Lamerson stated that his "clients" always removed the copyrighted images promptly; which is all the DMCA required of Global. But Lamerson refused to provide the names of the contact persons for these "clients" of Global. ALS' counsel then asked to speak to Global's attorney because ALS could not tolerate the continued massive violation of its copyrights on Global's system. Mr. Lamerson stated that he had a "bunch of lawyers on retainer" and would have one of them contact ALS' counsel shortly to discuss the matter (Lombardo Declaration ¶15).

---

[4] It was later learned that Chris Fernandez operates CAF Webhosting and Technology and Victor Hannan operates IBRH.
[5] ALS's counsel was provided with an e-mail from Mr. Lamerson to ALS, in which the signature line read: "Ramsey Lamerson, Global Innovations, Inc. Legal Department, Ph: 301-668-6350, Fx. 301-668-6224, Email: ramsey@globali.net." (Lombardo Declaration, ¶13).

ALS immediately began intensely policing Global's system for sites illegally publishing its copyrighted images and documented the unauthorized daily publication of hundreds of ALS' images on the Global System.  ALS sent Global DMCA "take-down" notices relating to each infringing page, the infringing pages would be taken down, and new infringing pages would appear on the Global system immediately thereafter.  By early February of 2003, the Global/Lamerson scam of using the DMCA Safe Harbor provision for Service Providers as a sword for its illegal activities became clear.  On February 11, 2003, ALS' legal counsel sent Mr. Lamerson an e-mail message demanding that he desist with the copyright infringement on Global's system or ALS would seek legal recourse.  ALS' counsel also informed Lamerson that no attorney had contacted ALS on Global's behalf, as promised (Lombardo Declaration ¶18).

On or about February 18, 2003, ALS' counsel was contacted by Charles Carreon who purported to be legal counsel for Lamerson and Global.  The merits of the case were discussed and Mr. Carreon advised that he would talk to his clients and respond shortly.  On February 20, 2003, Lombardo received a letter from Mr. Carreon which bore little relationship to the earlier telephone conversation (Exhibit "A" to Lombardo Declaration). Mr. Carreon and Mr. Lombardo continued their communications in an effort to resolve the dispute to no avail. (Lombardo Declaration, ¶19). Accordingly, on or about March 10, 2003, Mr. Lombardo informed Mr. Carreon that ALS would be filing an action in the United Stated District Court for the District of Maryland.  However, Mr. Lombardo advised Mr. Carreon that he would briefly await filing because the District Court had just switched to electronic filing and there was bound to be confusion upon implementation of the policy (See Introduction to Electronic Filing Requirements and Procedures found at http://www.mdd.uscourts.gov/CMECF/cmecfInfo.htm).  (Lombardo Declaration, ¶20).

Mr. Carreon offered to accept service of process for both Global and Lamerson and Lombardo advised that he would await notification of local counsel for Lamerson/Global before effecting service. Mr. Carreon assured Mr. Lombardo that local counsel in Maryland would be in contact shortly. (Lombardo Declaration, ¶20 and Exhibit "A").

During the course of their discussions, Mr. Lombardo asked Mr. Carreon if he also represented two of the most egregious infringers of ALS copyrights on the Global System -- "Caf Webhosting and

Technology" and "IBRH." It was ALS' intention to also name these entities and/or the individuals behind them in the Maryland Action. Carreon indicated that he was in the process of being retained by these entities/individuals and that he would get back to Mr. Lombardo. Thereafter, Mr. Carreon played a cat-and-mouse game, implying that he was about to be retained by these other Defendants but not yet in a position to accept service. (Lombardo Declaration, ¶¶27 and 28).

### C.  The Instant Lawsuit (the "California Action")

While Mr. Lombardo was finalizing the ALS complaint to initiate action in the Maryland District and waiting to hear from Mr. Carreon on the contact information for local counsel and whether or not he was representing CAF Webhosting and IBRH, Mr. Carreon filed his Complaint for Declaratory Relief on March 25, 2003. To insure that Lamerson/Global "won the race to the court house," instead of requesting that ALS' counsel accept service on behalf of ALS and/or Mr. Kirn, Mr. Carreon personally served both in Maryland. (Lombardo Declaration, ¶29)

### D.  The Action by ALS against Global Innovations et al. (the "Maryland Action")

On April 9, 2003, ALS filed a complaint for copyright and trademark infringement against Global Innovations, Inc., Ramsey Lamerson, Chris Fernandez (CAF Webhosting), Victor Hannan (IBRH), WilTel Communications, Equinix, Inc., and Does 1-10; Maryland District Court Action No. L03CV1028. (A copy of the complaint filed in the Maryland District Court is attached to the Lombardo Declaration in Support of the Motion to Dismiss/Transfer as Exhibit "C"). To date, only Mr. Hannan and Mr. Fernandez continue to evade service of process in the Maryland Action. (Lombardo Declaration, ¶32). With both this action and the Maryland Action filed, counsel for Lamerson and Global, on the one hand, and California counsel for ALS and Kirn, on the other, stipulated to a stay of activities amongst these parties in both cases pending the Court's ruling on the Motion to Dismiss/Transfer and this Motion to Enjoin Prosecution of the Maryland Action (Seitel Declaration, ¶4). It was stipulated by counsel that both of these Motions would be heard on August 1, 2003 and an Order has been entered thereon.

### IV.  ARGUMENT:

### A.  This Action Is An Inproper Anticipatory Litigation, Thus Defendants Claims In The

## Maryland Action Should Not Be Deemed A Compulsory Counterclaim

Plaintiffs' arguments in support of their Motion to Enjoin Prosecution of the Maryland Action, presuppose the propriety of the filing of this California Action. However, in this case, mechanical application of the "first-to-file" rule conflicts with the rationale underlying that rule and subverts the intent of F.R.C.P. Rule 13. Accordingly, before addressing the questions of whether the claims asserted by ALS and Kirn in the Maryland Action are compulsory counterclaims in this action, the propriety of this action must be considered.

The rule that declaratory relief lawsuits filed purely in anticipation of future litigation to secure a choice of forum are not entitled to judicial deference (even as against a subsequently-filed action) is well-settled in the Ninth Circuit. Because of the strong public policy against preemptive forum shopping, "one equitable consideration in such decision is whether the declaratory judgment action was filed in apparent anticipation of [another] pending proceeding." Ven-Fuel. Inc. v. Department of the Treasury, 673 F .2d 1194, 1195 (11th Cir. 1982). "The Declaratory Judgment Act should not be used to 'deprive the Plaintiff of his traditional choice of forum and timing, . . . provoking a disorderly race to the courthouse.'" Gribin v. Hammer Galleries, 793 F. Supp. 233, 234-35 (C.D. Cal. 1992) (*citing* Hanes Corp. v. Millard, 531 F.2d 585, 593 (D.C. Cir. 1976)). Generally a suit is anticipatory when the Plaintiff filed its suit upon receipt of specific, concrete indications that a suit by the Defendant was imminent." Ward v. Follett Corp., 158 F.R.D. 645, 648 (N.D. Cal. 1994). "A court may also relax the 'first to file' rule if the balance of convenience weighs in favor of the later-filed action." *Id*. As noted, ALS, Kirn, Global and Lamerson all reside and are employed in the State of Maryland. The vast majority of the evidence is in the possession of these parties in Maryland (Kiwak Declaration ¶¶2-3; LaPerle Declaration ¶3). Undoubtedly, the balance of convenience weigh in favor of resolution of the dispute between these parties in the Maryland Action.[6]

A number of cases have dismissed or stayed a first filed declaratory judgment suit in favor of a subsequent suit. See, e g, Tempo Elec. Heater Corp. v. Omega Eng'g., Inc., 819 F.2d 746 (7th

---

[6] This argument is fully briefed in Defendant's Motion to Transfer/Dismiss in which Defendants request transfer of this action to Maryland on forum non conveniens grounds. Rather than restate that argument in its entirety here, Defendants incorporate, by reference, the Motion to Dismiss/Transfer and the evidence submitted in support thereof.

8
OPPOSITION TO MOTION TO ENJOIN PROSECUTION
OF COMPULSORY COUNTERCLAIM AS SEPARATE ACTION
Case No. C03-1277 JSW

Cir.1987).; Budget Rent A Car Corp v. Miljack, Inc., 760 F Supp 135 (ND Ill 1991); Great American Ins Co v. Houston General Ins Co., 735 F Supp 581 (SD N.Y.1990); Koch Engineering Co, Inc v. Monsanto Co., 621 F Supp 1204 (ED MO 1985); First Fishery Development Service, Inc. v. Lane Labs USA, Inc., 1997 WL 579165 (1997 U.S. Dist LEXIS 11231) (S.D.Cal. 1997). In all of these cases the court determined that the declaratory Plaintiff had filed suit preemptively and thus was not entitled to the benefit of the first-to-file rule.

In Tempo Electric, the Seventh Circuit affirmed the decision of the district court declining to hear a declaratory judgment action against a trademark registrant where the registrant had later filed an infringement action against the Plaintiff on the same trademark. The court first emphasized that the "purposes of declaratory judgments are to 'clarify[ ] and settl[e] the legal relations at issue' and to "terminate and afford relief from the uncertainty, insecurity, and controversy giving rise to the proceeding.' " Tempo Elec. Heater Corp., 819 F.2d at 749, quoting Borchard, Declaratory Judgments 229 (2d ed. 1941). Thus, a declaratory judgment action is proper where "a party desires a declaration of the legal effect of a proposed or past course of action," but the prospect of judicial resolution of the issue is otherwise remote or uncertain. Tempo Electric, 819 F.2d at 749. But where a declaratory judgment action is filed in anticipation of an infringement action, the infringement action should proceed, even if filed later. Id. "The wholesome purpose of declaratory acts would be aborted by [their] use as an instrument of procedural fencing either to secure delay or to choose a forum." Id. at 750, quoting American Auto. Ins. Co. v. Freundt, 103 F.2d 613, 619 (7th Cir.1939).[7]

Here, counsel for Global and Lamerson, Mr. Carreon, effectively delayed the filing of a lawsuit in Maryland by urging that the parties negotiate a settlement "in the interests of avoiding a court battle that might be unnecessary" (Lombardo Declaration ¶19, Attachment "A"). Subsequently, the parties engaged in numerous discussions and exchanges of information in what ALS' counsel, Robert Lombardo, believed was an attempt to resolve the matter without resorting to litigation (Lombardo Declaration ¶19). Upon receiving notice of ALS' imminent intent to file an infringement action in

---

[7] Several courts elsewhere have reached the same conclusion on a similar set of facts. See, e.g., Serco Servs. Co. v. Kelley, 31 U.S.P.Q.2d 1795, 1797 (N.D.Tex.1994), aff'd, 51 F.3d 1037 (Fed.Cir.1995); American Greiner Elec., Inc. v. Establishments Henry Le- Paute, S.A., 174 F.Supp. 918 (D.D.C.1959); Technical Tape Corp. v. Minnesota Mining & Mfg. Co., 135 F.Supp. 505 (S.D.N.Y.1955).

Maryland, Global/Lamerson hastily filed this declaratory relief action while Mr. Lombardo was finalizing the ALS complaint to initiate action in the Maryland District and waiting to hear from Mr. Carreon on the contact information for local counsel and whether or not he was representing CAF Webhosting and IBRH (Lombardo Declaration ¶¶ 26-28).  Moreover, rather than informing Defendants of this filing during the course of communications between counsel, Plaintiffs chose to remain silent until Defendants were served – ALS at its Maryland office and Kirn at his Maryland home.  Plaintiffs' "back door" filing and service of this California Action is the clearest indication of the improper strategic purpose of this declaratory relief action and Plaintiffs should not now be allowed to stand behind the "first-to-file" rule and F.R.C.P. Rule 13 to support their actions.

The clear lesson of Tempo Electric is that any filing of a declaratory relief action in deliberate anticipation of an all but certain infringement action is nothing more than an abuse of the purposes of the Declaratory Judgment Act, 28 U.S.C. §2201(a).  Plaintiffs did not face the type of uncertainty that the Declaratory Judgment Act contemplates, nor did they need this declaratory action to settle legal relations.  Plaintiffs knew with certainty that ALS would file its suit in Maryland in short order and, therefore, did not need relief from the uncertainty engendered by a party who continually threatened litigation, but delayed in bringing suit.

Far from seeking to resolve uncertainty and settle legal relations (both of which could and should have been done in Maryland), Plaintiffs simply wanted to wrest the choice of forum away from ALS. Ven-Fuel, 673 F.2d at 1195 (finding forum shopping where Plaintiff filed a declaratory suit one day after being told of an imminent action, and one week before the action was filed); Amerada Petroleum Corp. v. Marshall, 381 F.2d 661, 663 (5th Cir. 1967) (finding forum shopping where a declaratory suit was filed forty days before the other action that Plaintiff knew would commence).  Thus, "Plaintiff[s] [have] artfully filed this action as a preemptive maneuver in anticipation of [their] defense and in order to seize a California forum . . . ." Gribin, 793 F. Supp. at 237.  This Court should not countenance such preemptive forum shopping and validate Plaintiffs' actions by deeming the claims made in the Maryland Action compulsory counterclaims pursuant to F.R.C.P. Rule 13.

**B.  Enjoining the Maryland Action in Strict Adherence to the First-to-File Rule Will Not Comprehensively Settle All Matters At Issue**

Additionally, in considering application of the "first-to-file" rule in this case, the Court should consider which action provides more comprehensive relief. Koch Engineering Co, 621 F. Supp at 1208 ("This court must also consider which of the two actions will best serve the needs of the parties by providing a comprehensive solution to the entire controversy."); Budget Rent A Car Corp, 760 F. Supp at 136 ("Here, the better alternative is to allow the Oklahoma action to proceed. The broader relief requested by CRLA in the Oklahoma suit would certainly address the relief sought by Budget in this action."). The Maryland Action involves not only copyright but also trademark infringement claims and names parties not named in this California Action. It is undisputed that the Maryland Action is broader and more comprehensive than this declaratory relief action hastily filed in California.

The instant lawsuit is merely one piece of a much larger picture, as not only are key Defendants absent in this litigation, but Lamerson's affiliates or alter egos –Hannon and Fernandez -- are not parties to this action. Therefore, the infringement action in Maryland is broader than this declaratory suit. Koch Engineering Co, Inc v Monsanto Co, 621 F. Supp. 1204, 1208 (ED MO 1985)("This court must also consider which of the two actions will best serve the needs of the parties by providing a comprehensive solution to the entire controversy."); Budget Rent A Car Corp v Miljack, Inc, 760 F. Supp. 135, 136 (ND Ill 1991)("Here, the better alternative is to allow the Oklahoma action to proceed. The broader relief requested by CRLA in the Oklahoma suit would certainly address the relief sought by Budget in this action"). The Maryland litigation will comprehensively and effectively settle the legal relations at issue.

V. **CONCLUSION**

Plaintiffs' Motion to Enjoin Prosecution of the Maryland District Court action on the ground that the claims asserted there are compulsory counterclaims in this declaratory relief action should be denied because this suit is an improper anticipatory action in which the "first-to-file" rule should not apply. Further, strict application of the "first-to-file" rule and F.R.C.P. Rule 13 in the present situation would not best serve the needs of the parties because a comprehensive solution to the entire controversy is available in the Maryland Action, not here.

//

//

1  Plaintiffs' use of F.R.C.P. Rule 13 to further its improper actions should not be supported by the Court
2  and this motion should be denied.
3  Dated: July 10, 2003                          IDELL, BERMAN & SEITEL

                                                By: _____/s/ Owen Seitel_____
                                                      Owen Seitel, Esq.
                                                      Attorneys for Defendants ALS SCAN, INC.,
                                                      WAYNE KIRN, APIC WORLD-WIDE, INC. and
                                                      STEVE EASTON