CHARLES CARREON (CSB # 127139)
ONLINE MEDIA LAW, PLLC
1131 Barrington Circle
Ashland, Oregon 97520
Tel: 541/482-2321
Fax: 541/482-4683

Attorneys for Plaintiffs
Global Innovations, Inc. and Ramsey Lamerson

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| GLOBAL INNOVATIONS, INC, a Maryland corporation, and RAMSEY LAMERSON, an individual,<br><br>Plaintiffs,<br><br>vs.<br><br>ALS Scan, Inc., a Maryland corporation, WAYNE KIRN, an individual, APIC WORLD-WIDE, INC., a Florida corporation, and STEVE EASTON, an individual,<br><br>Defendants. | CASE NO: C 03-01277 JSW<br><br>PLAINTIFF'S MEMORANDUM OF POINTS AND AUTHORITIES IN OPPOSITION TO MOTIONS TO DISMISS OF DEFENDANTS ALS SCAN, INC. AND "ALEX" KIRN<br><br>DATE: August 1, 2003<br>TIME: 9:00 a.m.<br>COURTROOM: 2, 17th Floor |

## MEMORANDUM OF POINTS AND AUTHORITIES

### ISSUES

Pursuant to Local Rule 7-4(3), the following issues are presented by this motion:

1. Whether ALS Scan, Inc. ("ALS") is subject to the specific jurisdiction of this Court due to its specific aiming at causing damage to the California assets and business relations of plaintiff Global Innovations, Inc. ("Global").

2. Whether the Court should order ALS to respond to jurisdictional discovery to determine whether its sales of online pornography over the Internet to California residents warrant its subjection to the general jurisdiction of this Court.

1

3. Whether the issue of forum non conveniens should be deferred until determination of the threshold issue of personal jurisdiction.
4. Whether the Court should exercise its discretion to exert jurisdiction over plaintiffs' claims for declaratory relief.

## FACTS

This action for declaratory relief was commenced in California in to resolve uncertainty cast over the legality of the California-related business activities of Global Innovations, Inc. ("Global"), an Internet Service Provider ("ISP"), which has a substantial presence in San Jose and Palo Alto, California. (Carreon Dec. ¶ 2.) Global's facilities and substantial business assets and commercial relations in the State of California are established by Global's CEO Ramsey Lamerson. (Lamerson Dec. ¶¶ 2 – 11.) ALS's house counsel Robert Lombardo ("Mr. Lombardo") specifically aimed at causing damage to Global's California business relationships when he sent a series of four emails on March 17th, March 20th, and March 21st, to Equinix Associate Counsel Kurt Pletcher. (Exhibit 1.) Equinix is a California resident that provides essential services to Global. (Lamerson Dec. ¶¶ 2 – 11.) Mr. Lombardo's first email threatened to sue Equinix : "I represent ALS Scan, Inc. … that is preparing a complaint to be filed against Ramsey Lamerson, Global Communications, Inc. and others in the United States District Court for the District of Maryland for massive copyright infringement. I also plan on adding a civil RICO count." (Exhibit 1.)

Mr. Lombardo's next email "put Equinix on notice of the infringing activity [to] demand that it not continue to cause, assist and/or materially contribute to the infringing conduct of the named defendants." (Exhibit 1.) Lombardo's threats were directed at stopping infringement "***at Equinix's facility.***" (Exhibit 1, emphasis added). Equinix has facilities in California and Virginia, but none in Maryland. (Carreon Dec. ¶ 13.)

Subsequent emails from Mr. Lombardo to Equinix continued in the same vein, threatening to stir up trouble with "other copyright holders," confirming that he made the same threats over the telephone, and emphasizing the fact that ALS intended to burden

Equinix with long-term litigation in a distant forum, including appeal to the "Fourth Circuit." (Carreon Dec. ¶ 5, Exhibit 1.) On March 27, 2003, defendants APIC World-Wide, Inc. ("APIC") and Steve Easton ("Easton"), acting as the express agents for ALS, sent an email purporting to identify Equinix as complicit with Global in a scheme of copyright infringement. (Exhibit 2.) APIC'S Exhibit 2 email, however, identifies only alleged infringements of photographs created by California photographer "Suze Randall," and no infringements of ALS content.

Global and Equinix are contractually bound to detailed terms pursuant to a Master Service Agreement ("MSA") signed May 14, 2001by both parties. (Carreon Dec. ¶¶ 8 – 9.) The MSA selects California law as the law governing interpretation of its terms in Paragraph 10.b, as follows:

> "This Agreement will be governed in all respects by the internal laws of the State of California (as if made and entered into between California residents and fully executed within California) without regard to its conflict of laws provisions."

Paragraph 15 of the MSA provides that Global will "indemnify and hold harmless" Equinix in litigation arising out of Global activities.[1]

ALS's attacks on Global's commercial relations with Equinix were intended to interfere with Equinix's performance of a contract made in California and governed by California law. ALS intended to damage Global's business in California and its relations with Equinix, a California resident. ALS took direct aim at the relationship between a California resident and Global, a company having substantial California contacts, intending to cause harm within the jurisdiction, and creating the risk of harm to California's high-tech economy. (Carreon Dec. ¶p 11 – 12.)

The costs of defense incurred by Equinix due to ALS's conduct will be settled upon Global pursuant to an indemnity agreement that is expressly governed by California

---

[1] The MSA is not attached to this Declaration, but will be submitted in camera upon the Court's request.

law; therefore, Global should be allowed to "stand in the shoes" of Equinix from the outset of the action, enjoying the forum that would be available to Equinix if it had sought declaratory relief against ALS directly. (Carreon Dec. ¶ 12.)

The foregoing facts establish that ALS is subject to this Court's specific jurisdiction. Additionally, ALS is subject to the general jurisdiction of this Court because it operates several websites that offer to sell pornography to California residents, inviting them to use their credit or debit cards to engage in instantaneous transactions to purchase these products, including www.alsscans.com, www.alsangels.com, and www.heartbreakers.com. (Carreon Dec. ¶ 14.) All of these website offer "memberships" to California residents at a charge of $19.95/month. ALS also offers videos, DVDs, and CDs directly to California residents through credit and debit card sales on its website at www.alscdsonline.com. ALS also offers DVDs over the Internet through a distribution arrangement with another Maryland company. (Carreon Dec. ¶ 14.)

Sarah Kiwak, ALS's Director of Operations admits that "95% of ALS' revenues are derived through sign-ups and sales completed automatically through the Internet," but claims that "ALS does not keep records of where its members reside but membership is available to anyone, over the age of 21, throughout the world." (Kiwak Dec. ¶ 8.) Kiwak's sworn statement is directly controverted by the "Terms and Conditions of Membership" on the www.alsscan.com website. (Exhibit 3.) The Terms and Conditions plainly state:

> "***ALS maintains a confidential log offline of all user information*** including IP addresses and times, as required by Credit Card companies. This data is secured ***under 24 hour video surveillance***. This information is never sold or distributed. However, ***personal information is used in case of credit card fraud to assist law enforcement***."
> http://www.alsscans.com/terms.html  (Carreon Dec. ¶ 15; Exh. 3.)

Plaintiffs have propounded discovery to elicit information concerning the extent and value of the pornography sales ALS makes in California through these websites.

4

      a. **Exhibit 4:** Plaintiffs' First Requests for Admissions.

      b. **Exhibit 5:** Plaintiffs' First Set of Interrogatories.

      c. **Exhibit 6:** Plaintiff's First Request for Production of Documents.

Plaintiffs' counsel has set forth specifically which categories of discovery were propounded to: (1) establish that ALS has knowledge of the extent and value of its sales of goods and services to Californians, (2) identify the relevant facts, witnesses, and documents, and (3) request production of the relevant documents. (Carreon Dec. ¶¶ 17 – 18.) When this discovery has been answered, it will be clear that ALS is subject to the general jurisdiction of this Court, as well as the specific jurisdiction arising out of its intentional "aiming" at causing harm within the jurisdiction.

Defendant Alex Wayne Kirn ("Kirn) seeks to dismiss the action against him, claiming he lacks jurisdictional contacts. Plaintiffs have proceeded against Kirn on the basis of an alter ego theory. The discovery directed to ALS should produce detailed information concerning the financial structure of ALS. This information will provide the basis for evaluating whether the alter-ego allegations made by plaintiffs on information and belief are supportable with fact. If they are, then Kirn's motion to dismiss should be denied.

Kirn's statements are subject to impeachment, since he is a convicted Federal felon. Attached hereto as **Exhibit 7** is the Judgment of Conviction in <u>United States v. Wayne Alexander Kirn</u>, Case No. AMD-97-0068, District of Maryland, for Possession of Child Pornography in violation of 18 U.S.C. § 2252(a)(4)(B) on March 9, 1998. (Carreon Dec. ¶ 22.) While it may be surprising that a convicted child pornographer continues to be successful in the pornography business, Kirn is successful, and in an online interview that he gave to Washington Business Forward, a Beltway periodical, announced that his websites get 150,000 visitors per day. (**Exhibit 8**.) With 150,000 visitors per day, at least a few thousand must be from California, yet his company is playing coy with the facts. Given Kirn's criminal background, and the dissimulation practiced by his employee Sarah Kiwak's concealment of the fact that ALS keeps address

information on its customers, Kirn's own statements that he lacks jurisdictional contacts with California, the epicenter of the pornography industry, are worthy of further scrutiny.

## ARGUMENT

### 1. ALS Is Subject To The Specific Jurisdiction of The Court

A party that takes aim at business interests located in the forum state subjects itself to the specific jurisdiction of the forum, regardless of whether it generally lacks contacts with the forum state. *Calder v. Jones,* 465 U.S. 783, 788 – 790 (1984)(libel defendants from Florida held to answer in California for allegedly defaming California actress whose career revolved around California business relationships.)  The *Calder* test applies the "minimum contact analysis" to all cases of intentional tort generally.  In *Bancroft & Masters, Inc. v. Augusta Nat. Inc.*, 223 F.3d 1082, 1087-1088 (9th Cir. 2000), following *Calder*, the Ninth Circuit found that a single letter that was sent to Virginia with the intent to cause harm to a California resident was sufficient to subject the foreign defendant to jurisdiction in California.  *Bancroft & Masters*, 223 F.3d at 1087-1088.

In this case, the same type of facts are present.  Global is a corporation with substantial business interests in California, and its relationship with Equinix is entirely premised upon a contract formed and to be interpreted under the law of California. (Carreon Dec. ¶¶ 8 – 9; Lamerson Dec. ¶¶ 4 – 11.)  Further, Global has indemnity obligations to Equinix that make it equitable to allow it to "stand in the shoes" of Equinix from the inception of the action, since it will ultimately be obliged to stand in those shoes for purpose of defense and indemnity.  (Carreon Dec. ¶ 10; Pletcher Dec. ¶ 7.)

ALS and its agents, Mr. Lombardo, APIC and Easton, have all directed hostile threats of litigation into California via offensive email.  Those threats have been unambiguously targeted at inducing a breach in the relations between Equinix and Global.  Those relations are governed by California law.  It can come as no surprise to ALS that, having sought to induce a breach between Equinix, a California resident, and Global, which has substantial assets and business activity in the state, it should be haled into this jurisdiction for suit.  ALS has engaged in the precise activity that activates the

doctrine of specific jurisdiction, by engaging in "(1) intentional actions (2) expressly aimed at the forum state (3) causing harm, the brunt of which is suffered--and which the defendant knows is likely to be suffered—in the forum state." *Core-Vent Corp. v. Nobel Industries, AB*, 11 F.3d 1482, 1486 (9th Cir. 1993). Accordingly, ALS is subject to this Court's jurisdiction, and its motion to dismiss for lack of personal jurisdiction should be denied.

### 2. Discovery Should Be Granted To Establish General Jurisdiction Over ALS and to Determine The Issue of Jurisdiction over Kirn

General jurisdiction is established when the defendant's contacts with the forum state are continuous and systematic. A defendant whose contacts are "continuous and systematic" can be haled into court in that state in any action, even if the action is unrelated to those contacts. *Helicopteros Nacionales de Colombia, S.A. v. Hall*, 466 U.S. 408, 415 (1984). A defendant that makes sales, solicits or engages in business in the state, or serves the state's markets may be subject to general jurisdiction. *Hirsch v. Blue Cross, Blue Shield of Kansas City*, 800 F.2d 1474, 1478 (9th Cir. 1986).

ALS's motion attempts to deny the types of contacts that will establish general jurisdiction, but given what is commonly known about the prevalence of Internet usage in California (it far exceeds that of the rest of the nation), and what the Court knows about ALS (that Kirn has admitted its websites receive 150,000 Internet visitors daily, and that its websites actively solicit pornography sales to all visitors), it is highly likely that ALS's contact are so continuous and systematic as to bind it to this Court's general jurisdiction.

Discovery is required here. As the Ninth Circuit opined less than two months ago in *Harris Rutsky & Co. v. Bell & Clements Limited,* 328 F.3d 1122 (2003)(submitted as Exhibit 9 hereto), when the record on jurisdiction is left undeveloped by discovery, reversal is virtually obligatory upon the reviewing court.

Plaintiffs have submitted discovery that will thoroughly smoke out the issue of ALS's jurisdictional contacts. The Court is respectfully requested to approve the service

7

of discovery, to direct ALS to respond to the same within a reasonable time period, and to schedule this matter for further argument on September 26, 2003. (Carreon Dec. ¶¶ 14 – 20.) Additionally, as the *Harris & Rutsky* opinion further noted, discovery is helpful to resolve the claim that corporate alter-egos should be subjected to jurisdiction. (See Exhibit 9, ¶¶ 68 – 69.) Accordingly, for both these reasons, jurisdictional discovery should be allowed.

### 3. The Court Should Exercise Its Discretion To Hear Plaintiffs' Claims for Declaratory Relief, and Place the Forum Non Conveniens "Cart" After the Jurisdictional "Horse"

ALS's argument that this action should not be entertained because the action will not resolve all disputes between all parties are simply meritless. This Court has authority to do justice among all parties properly before it, and once the jurisdictional issue is resolved, there will be no impediment to its exercise of adjudicative authority.

This action was commenced to resolve a festering dispute that had plagued plaintiffs' business activities for the entirety of year 2003. (Lamerson Dec. ¶¶ 12 -17.) Far from being an action that will not put to rest the disputes of all parties in a single action, it is the first-filed action, in the right jurisdiction, for resolving all disputes. Equinix, which has no Maryland business presence, has been sued by ALS in Maryland, which now insists that it will be most convenient for Equinix to be sued there. Equinix does not agree with this proposition, and if it must be sued by ALS, would prefer that the suit take place in its own state of residence. (Pletcher Dec. ¶ 10.)

As the Ninth Circuit observed in *Harris & Rutsky*, where jurisdictional issues have not been resolved, and the record has not been developed through proper jurisdictional discovery, forum non conveniens issues need not be considered. (Exhibit 9, ¶ 73.)

**4. Conclusion**

For all of the reasons set forth above, the Court is respectfully requested to deny the motions to dismiss of all defendants, to direct ALS to respond to the discovery propounded by plaintiffs, and to set this matter for further briefing and final hearing on September 26, 2003, when the hearings on plaintiff's motion for preliminary injunction as to defendants APIC and Easton will be heard.

Dated: July 12, 2003                    ONLINE MEDIA LAW, PLLC

By: s/Charles Carreon/s
CHARLES CARREON, CSB #127139
Attorney for Plaintiffs Global Innovations, Inc. and
Ramsey Lamerson