CHARLES CARREON (CSB # 127139)
ONLINE MEDIA LAW, PLLC
1131 Barrington Circle
Ashland, Oregon 97520
Tel: 541/482-2321
Fax: 541/482-4683

Attorneys for Plaintiffs
Global Innovations, Inc. and Ramsey Lamerson

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| GLOBAL INNOVATIONS, INC, a Maryland corporation, and RAMSEY LAMERSON, an individual,<br><br>Plaintiffs,<br><br>vs.<br><br>ALS Scan, Inc., a Maryland corporation, WAYNE KIRN, an individual, APIC WORLD-WIDE, INC., a Florida corporation, and STEVE EASTON, an individual,<br><br>Defendants. | CASE NO: C 03-01277 JSW<br><br>DECLARATIONS OF CHARLES CARREON, RAMSEY LAMERSON AND KURT PLETCHER IN SUPPORT OF PLAINTIFFS' OPPOSITION TO MOTIONS TO DISMISS OF DEFENDANTS ALS SCAN, INC. AND "ALEX" KIRN<br><br>DATE: August 1, 2003<br>TIME: 9:00 a.m.<br>COURTROOM: 2, 17th Floor |

INTRODUCTORY STATEMENT

Plaintiffs submit herewith declarations in support of their opposition to the motions to dismiss filed by defendants ALS Scan, Inc. ("ALS") and "Alex" Kirn.    With respect to technical matters summarized in the attached declarations making reference to Internet resources or documents that may not be directly attached hereto as exhibits for the sake of brevity, plaintiffs request that such averments be admitted as a summary of evidence under F.R.E. 1006, with leave available pursuant to Rule 1006 to submit additional documentation, should the same be required by the Court.

The declarations submitted herewith are as follows:

1

1. Declaration of Charles Carreon, counsel for moving plaintiffs herein

2. Declaration of Ramsey Lamerson, plaintiff and CEO of plaintiff Global Innovations, Inc.

3. Declaration of Kurt Pletcher, Associate Counsel for Equinix

All exhibits referenced in these declarations are separately submitted as Plaintiff's Exhibits In Support of Opposition to Motions to Dismiss of Defendant ALS Scans, Inc. and Alex Kirn.

Dated:  July 12, 2003              ONLINE MEDIA LAW, PLLC

By: s/Charles Carreon/s_____
CHARLES CARREON, CSB #127139
Attorney for Plaintiffs Global Innovations, Inc. and
Ramsey Lamerson

DECLARATIONS OF CHARLES CARREON, RAMSEY LAMERSON AND KURT PLETCHER
IN SUPPORT OF PLAINTIFFS' OPPOSITITION TO DEFENDANTS' MOTIONS TO DISMISS

## DECLARATION OF CHARLES CARREON

Charles Carreon declares:

1. I am the attorney for plaintiff, licensed to practice in all State and Federal courts in the States of California and Oregon. I make this declaration in support of plaintiff's opposition to the motions to dismiss filed by defendants ALS Scan, Inc. ("ALS") and "Alex" Kirn ("Kirn").

### Facts Establishing Specific Jurisdiction Over ALS

2. This action for declaratory relief was commenced in California in large part to resolve the cloud of uncertainty cast over the legality of the California-related business activities of my client Global Innovations, Inc. ("Global"), an Internet Service Provider ("ISP"), which has a substantial presence in San Jose and Palo Alto, California.

3. Global's facilities and substantial business assets and commercial relations in the State of California are established by Global's CEO Ramsey Lamerson in his declaration below. Based on those contacts, it is reasonable for ALS to be haled into court in California when it has engaged in specific attacks on Global's use of its California business assets and commercial relationships.

### Specific Aiming of Threatening Communications Into the Forum State To Induce A California Company to Sever Its Commercial Relations With Global

4. ALS's house counsel Robert Lombardo ("Mr. Lombardo") specifically aimed at causing damage to Global's California business relationships when he sent four emails on March 17th, March 20th, and March 21st, to Associate Counsel Kurt Pletcher, attached hereto as **Exhibit 1**. Mr. Lombardo's first email states:

> "As you know I represent ALS Scan, Inc. ("ALS") a Maryland (U.S.) corporation that is preparing a complaint to be filed against Ramsey Lamerson, Global Communications, Inc. and others in the United States District Court for the District of Maryland for massive copyright infringement. ***I also plan on adding a civil RICO count.*** *** The

3

purpose of this e-mail is to put Equinix on notice of the infringing activity and to demand that it not continue to cause, assist and/or materially contribute to the infringing conduct of the named defendants. If you have any questions or comments regarding this e-mail, please contact me directly. I would be happy to discuss the matter with you more fully. However, in no case will ALS continue to allow the infringement to continue *at Equinix's facility.*" (Emphasis added).

5. The subsequent emails from Mr. Lombardo to Equinix continue in the same vein, threatening to stir up trouble with "other copyright holders," confirming that he made the same threats over the telephone, and emphasizing the fact that it intends to burden Equinix with long-term litigation in a distant forum, including appeal to the "Fourth Circuit":

"There are hundreds of copyright violations each day. But it is only *recently discovered* that it is *your facility that makes it possible*. I have notified *other copyright holders* and informed them that Global Innovations uses your facility in Ashburn, VA. You should be receiving *more notices from them* in the future. As I told you by telephone, the purpose of my e-mails and telephone calls is to put Equinix on notice of the copyright infringement. If it does not *take some action to curtail the infringement* occurring *at its facility*, it will be up to *the judge and/or the Fourth Circuit to determine liability*." (Emphasis added.)

6. On March 27, 2003, defendants APIC World-Wide, Inc. ("APIC") and Steve Easton ("Easton"), acting as the express agents for ALS, began sending emails purporting to identify Equinix as complicit with Global in a scheme of copyright infringement. (**Exhibit 2**.) Although APIC and Easton clearly sent this email at this time to "keep the heat" on Equinix for the benefit of ALS, the email identifies alleged infringements of photographs created by California photographer "Suze Randall."

4

7. ALS's attacked Global's business relationship with Equinix to induce it to sever relations with Global in California. As averred by Mr. Lamerson in his declaration, such a severance of relations could damage Global's business severely, and result in the loss of Global's monthly spending of between $20,000 and $40,000 in the California high-tech economy.

**Global's Contractual Duties to Equinix Arise Under An Agreement That Selects California Law "As If The Contract Were Made Between California Residents"**

8. Global and Equinix have been contractually bound to detailed terms pursuant to a Master Service Agreement ("MSA") signed May 14, 2001by both parties.

9. The MSA selects California law as the law governing interpretation of its terms in Paragraph 10.b, as follows:

> "This Agreement will be governed in all respects by the internal laws of the State of California (as if made and entered into between California residents and fully executed within California) without regard to its conflict of laws provisions."

**Global's Indemnity Agreement With Equinix,**

10. Paragraph 15 of the MSA provides that Global will "indemnify and hold harmless" Equinix in litigation arising out of Global activities.[1]

**Since Global Will Shoulder Equinix's Burden of Defense and Liability, It Should Be Allowed the Same Forum Available to Equinix, Whom it Is Bound to Defend Under California Law**

11. ALS's attacks on Global's commercial relations with Equinix were intended to interfere with Equinix's performance of a contract made in California and governed by California law. ALS intended to visit damage upon Global that would forseeably damages Global's business in California and its relations with Equinix, a California resident. ALS took direct aim at the relationship between a California resident and

---

[1] The MSA is not attached to this Declaration, but will be submitted in camera upon the Court's request.

5

Global, a company having substantial California contacts, intending to cause harm within the jurisdiction, and creating the risk of harm to California's high-tech economy.

12. Since the costs of defense incurred by Equinix due to ALS's conduct will be settled upon Global pursuant to an indemnity agreement that is expressly governed by California law, Global should be allowed to "stand in the shoes" of Equinix from the outset of the action, enjoying the forum that would be available to Equinix if it had sought declaratory relief against ALS directly.

**Equinix Is Subject to Jurisdiction In This Action,**

**Which May Not Be The Case In Maryland**

13. Mr. Lombardo's above-quoted emails to Mr. Pletcher charge Equinix with "assisting infringement activity" at its facilities in Ashburn, Virginia. Equinix has facilities in Virginia, but has no facilities or other physical contacts whatsoever in Maryland. There is a substantial question how ALS would establish jurisdiction over Equinix in Maryland. No such question arises with this forum, where Equinix is domiciled.

**Facts Relevant to General Jurisdiction**

14. ALS operates several websites that offer to sell pornography to California residents, inviting them to use their credit or debit cards to engage in instantaneous transactions to purchase these products, including www.alsscans.com, www.alsangels.com, and www.heartbreakers.com. All of these website offer "memberships" to California residents at a charge of $19.95/month. ALS also offers videos, DVDs, and CDs directly to California residents through credit and debit card sales on its website at www.alscdsonline.com. ALS also offers DVDs over the Internet through a distribution arrangement with another Maryland company.

15. Attempting to avoid the necessary assumption that a substantial number of these Internet pornography sales are made to Californians, Sarah Kiwak, ALS's Director of Operations admits that "95% of ALS' revenues are derived through sign-ups and sales completed automatically through the Internet," but claims that "ALS does not

6

keep records of where its members reside but membership is available to anyone, over the age of 21, throughout the world." (Kiwak Dec. ¶ 8.) This declaration of ignorance is directly controverted by the "Terms and Conditions of Membership" on the www.alsscan.com website, attached hereto as **Exhibit 3**:

> "***ALS maintains a confidential log offline of all user information*** including IP addresses and times, as required by Credit Card companies. This data is secured *under 24 hour video surveillance*. This information is never sold or distributed. However, ***personal information is used in case of credit card fraud to assist law enforcement***."
> http://www.alsscans.com/terms.html

16. In order to make clear with admissible evidence what ALS is concealing with apparently false averments, I propounded the following discovery intended to elicit information concerning the extent and value of the pornography sales ALS makes in California through these websites.

   a. Attached as **Exhibit 4** is Plaintiffs' First Requests for Admissions ("RFAs").
   b. Attached as **Exhibit 5** is Plaintiffs' First Set of Interrogatories ("Interrogs").
   c. Attached as **Exhibit 6** is Plaintiff's First Request for Production of Documents ("RFPs").

17. The following categories of discovery were propounded to: (1) establish that ALS has knowledge of the extent and value of its sales of goods and services to Californians, (2) identify the relevant facts, witnesses, and documents, and (3) request production of the relevant documents.

   a. RFAs 1 - 3 and 7 – 12.
   b. Interrogs 4 – 13.
   c. RFPs 1 - 4, 11 – 14, 20 – 25.

DECLARATIONS OF CHARLES CARREON, RAMSEY LAMERSON AND KURT PLETCHER
IN SUPPORT OF PLAINTIFFS' OPPOSITION TO DEFENDANTS' MOTIONS TO DISMISS

18. I have propounded other categories of discovery calculated to discover other relevant facts that I believe in good faith will establish that ALS is subject to general jurisdiction within California. For example, RFPs 14 – 19 seek documents concerning the retailing of DVDs in California through a licensee, RFPs 20 – 23 seek information about wholesale CD, DVD and video sales in California, RFPs 24 – 26 seek information concerning video production and employment of California photographers, RFP 27 seeks information to establish how many California models are featured in ALS photographs, and RFP 28 – 29 seek to ascertain how many of the "cease and desist letters" sent out by ALS are sent to Californians. All of these documents will be relevant to establishing the pervasive economic activity and purposeful availment of the benefits of doing business in the California forum that makes it proper for the forum to exercise jurisdiction over ALS.

19. All of the discovery propounded was propounded for the good faith purpose of establishing facts relevant to general or specific jurisdiction, and not to harass, annoy or cause needless expense. I propounded that discovery after courteous prior notice to opposing counsel, with the explanation that I would seek the Court's approval of the discovery and an order deeming it served as of the date of service; accordingly, the same is respectfully requested.

20. For all of the above reasons, the California forum has personal jurisdiction over ALS, and the Court is requested to deny ALS's motion to dismiss on that ground. Should the Court determine that the motion ought not be denied outright, leave to conduct jurisdictional discovery is requested, on such terms as the Court finds reasonable. The next hearing in this case is scheduled for September 26, 2003. Accordingly, plaintiffs request the Court to set that date for hearing on the issues of personal jurisdiction, and to set intermediate dates for ALS to respond to jurisdictional discovery, and for plaintiffs to file further briefs summarizing the results of discovery and their legal importance.

8

DECLARATIONS OF CHARLES CARREON, RAMSEY LAMERSON AND KURT PLETCHER
IN SUPPORT OF PLAINTIFFS' OPPOSITION TO DEFENDANTS' MOTIONS TO DISMISS

21. As to defendant Alex Wayne Kirn, the discovery directed to ALS should produce detailed information concerning the financial structure of ALS.  This information will provide the basis for evaluating whether the alter-ego allegations made by plaintiffs on information and belief are supportable with fact.  If they are, then Kirn's motion to dismiss should be denied.

22. Kirn's statements are also subject to impeachment, since he is a convicted Federal felon.  Attached hereto as **Exhibit 7** please find the Judgment of Conviction in <u>United States v. Wayne Alexander Kirn</u>, Case No. AMD-97-0068, District of Maryland, for Possession of Child Pornography in violation of 18 U.S.C. § 2252(a)(4)(B) on March 9, 1998. [2]

23. Kirn is successful, and in an online interview that he gave to Washington Business Forward, a Beltway periodical, announced that his websites get 150,000 visitors per day.  (**Exhibit 8**.)

24. For all of the above reasons, the plaintiffs respectfully request the Court to deny the motion to dismiss of all moving defendants.

I declare that the foregoing is true and correct under the laws of the State of California and of the United States of America, and that this Declaration was executed at Ashland, Oregon, on July 12, 2003.

_____s/Charles Carreon/s_____
Charles Carreon, Declarant

---

[2] The conviction was the result of a negotiated plea pursuant to which charges of Possessing with Intent to Sell, and Sale of Child Pornography were dismissed.  The affidavit submitted in support of the search warrant that resulted in the raid on Kirn's porn-production studio clearly supported the conclusion that Kirn sold the child porn for consideration.  Kirn was recorded by an informant wearing a "wire" while selling of a 3,000-image CD of child porn for $100, and confessed his guilt in a handwritten statement made in the presence of the arresting agents.  Plaintiff has omitted these portions of the criminal file for the sake of brevity, and will submit the same in camera upon the Court's request.

DECLARATIONS OF CHARLES CARREON, RAMSEY LAMERSON AND KURT PLETCHER
IN SUPPORT OF PLAINTIFFS' OPPOSITION TO DEFENDANTS' MOTIONS TO DISMISS

# DECLARATION OF RAMSEY LAMERSON

Ramsey Lamerson declares:

1. I am a plaintiff in this action, and the CEO of plaintiff Global Innovations, Inc., ("Global"). The matters stated herein are known to me of personal knowledge and an informed review of documents and relevant evidence, and if called as a witness, I could so competently testify.

**Global's Status as an ISP**

2. Global is an Internet Service Provider ("ISP")[3] that provides Internet Protocol ("IP") transit, transport, and colocation services throughout North America. Using hardware and software resident in substantial part in the State of California, Global supplies Internet connectivity to many large corporations that in turn service thousands of Internet users.

3. ISPs like Global are engaged in what is colloquially called the "sale of bandwidth." Bandwidth is literally the medium of digital communication, and is measured in "bits per second," a bit being a unit of digital information. Bandwidth is thus measured, and valued, as "the capacity to move x amount of information in y amount of time." To move large amounts of data quickly requires large amounts of bandwidth. Global is a constantly growing ISP that currently is one of the largest in the United States in terms of moving bandwidth.

**Global Must Maintain California Facilities**

**to Comply With the "Peering Requirements" of Other Large ISPs**

4. In order to function as a large, national ISP, Global must have both a physical presence and solid business relationships in California, particularly in the large ISP operations centers in San Jose and Palo Alto. This presence is required for

---

[3] The term ISP has become the colloquial name for what what are called "online service providers" in 17 U.S.C. § 512, the Digital Millennium Copyright Act ("DMCA").

10

DECLARATIONS OF CHARLES CARREON, RAMSEY LAMERSON AND KURT PLETCHER
IN SUPPORT OF PLAINTIFFS' OPPOSITITION TO DEFENDANTS' MOTIONS TO DISMISS

two purposes: (1) To qualify to meet the specifications of peering relationships with other large ISPs, and (2) To serve California Internet users and companies.

5. When I say that Global must "meet the specifications of peering relationships with other large ISPs," I am referring to the fact that Global has "peering relationships" with other large ISPs that require Global to make its network resources available to move electronic communications originating from very large ISPs like Earthlink, Verio, Qwest, Spring, AT&T, and America Online.[4] The ISP business is built on sharing resources in this way, and in order to share resources with very large ISPs like those listed above, Global must have extensive network resources.

6. Large ISPs like Earthlink[5] and the others listed above <u>will not enter into peering relationships with ISPs unless they are bi-coastal</u>. Indeed, most large ISPs only enter into peering relationships with ISPs that are not only bi-coastal, but also have a network located in the Midwest United States.[6]

**Global Maintains Its California Computers**

**In Equinix Colocation Facilities in San Jose and Palo Alto, California**

7. Global satisfies the <u>bi-coastal requirement</u> imposed by its peering relationships by purchasing services from Equinix, a corporation headquartered in Foster City, California. Equinix leases space in its colocation facilities (secure, controlled environments necessary for proper computer operation) where Global operates its large computers on the west coast (Global's "California computers").

8. Global maintains costly computers in the Equinix colocation facilities in San Jose and Palo Alto. Global's California computers are "Juniper Networks Routers and Foundry Switches."

---

[4] This list is illustrative only, as Global has peering relationships with many other ISPs.
[5] Earthlink is emphasized here because it is one of the oldest and largest California ISPs, providing services to a very large number of California businesses, websites, and individuals.
[6] Global has a network in Chicago to satisfy this requirement.

11

DECLARATIONS OF CHARLES CARREON, RAMSEY LAMERSON AND KURT PLETCHER
IN SUPPORT OF PLAINTIFFS' OPPOSITITION TO DEFENDANTS' MOTIONS TO DISMISS

9. Global's California computers located at the Equinix colocation facilities in San Jose and Palo Alto are connected by a "gigabit Ethernet connection" that Global leases from another California-based company.[7]

### If Equinix Were To Terminate Its Relationship With Global, It Would Cause Severe Damage to Global and California Internet Users

10. If Equinix were to eject Global's California computers from its San Jose and Palo Alto colocation facilities, Global would be unable to perform its ISP duties, and a very large number of businesses, websites, and Internet users, in California and elsewhere, would lose contact with the Internet. Global's California presence is substantial and vital to its business activities and to business activities in California.

### Global's California Business Presence Contributes Substantial Revenue to the California High Tech Economy

11. Not only does Global use its California computers as a foundational element of its business activity, Global's financial investment in the California economy is substantial. During the last twelve months, Global has paid between $20,000 - $40,000 per month to California companies including Equinix and other high-tech companies. If Equinix were to terminate its relationship with Global, it would undoubtedly cause a decline in net revenue to California high tech workers.

### Why This Action Has Been Filed In California

12. I directed my counsel to file this action in California in order to resolve lingering legal uncertainties created by the actions of the defendants in this case, which were directed toward Global's business activity in California and legal obligations arising out of that activity. In early 2003, I received several telephone calls from Robert Lombardo, house counsel for ALS, threatening to file suit against Global and myself personally for alleged infringement of ALS copyrights. Mr.

---

[7] I prefer not to reveal the identity of this company, anticipating that ALS, APIC and Easton will make that company a target of harassment such as that they have directed toward Equinix.

DECLARATIONS OF CHARLES CARREON, RAMSEY LAMERSON AND KURT PLETCHER
IN SUPPORT OF PLAINTIFFS' OPPOSITION TO DEFENDANTS' MOTIONS TO DISMISS

Lombardo was very offensive and threatening, stating that he would take away all of my assets, and litigate the case, if necessary, to "the Fourth Circuit," which I now understand is an appeals court where Mr. Lombardo has litigated on occasion. Mr. Lombardo was extremely aggressive and rude, and his position was non-negotiable. In essence, he said Global either had to "stop" all infringement of his client's content on any websites hosted by any ISP that bought bandwidth from Global, or he would sue Global out of business, and take away all of my personal assets. Since Global does not host any websites and has no contractual relations with any website operators, Global cannot "stop" all infringement on Global's downstream network, and Mr. Lombardo was thus telling me to either go out of business voluntarily, or lose the company via litigation. During our last phone conversation, on or about February 11, 2003, Mr. Lombardo said he would file suit against Global and myself on or about February 21, 2003. He said nothing about suing my California colocation provider, Equinix.

13. On February 14, 2003, I retained Mr. Carreon to deal with Mr. Lombardo. Mr. Carreon spoke with Mr. Lombardo, and thereafter relayed the information that Mr. Lombardo intended to file a lawsuit immediately. At my direction, Mr. Carreon contacted a Maryland lawyer to act as local counsel who could assist in obtaining Mr. Carreon's admission to the Maryland U.S. District Court to defend Global and myself.

14. On or about March 10, 2003 I received a telephone call from Mr. Lombardo at my parents' home. He told me that he hadn't intended to contact me, but rather wanted to talk to my father. He then called Mr. Carreon, whom he told that ALS would be suing my father and mother for being in a "RICO conspiracy" with Global and myself, and that he would "take away their house." This was a very shocking and disturbing threat, because my father is employed in a corporation

13

DECLARATIONS OF CHARLES CARREON, RAMSEY LAMERSON AND KURT PLETCHER
IN SUPPORT OF PLAINTIFFS' OPPOSITION TO DEFENDANTS' MOTIONS TO DISMISS

with very large U.S. government contracts, and a racketeering lawsuit would undoubtedly prove embarrassing to him.

15. On March 17, 2003, ALS directly attacked Global's California presence when Mr. Lombardo sent a threatening email to Kurt Pletcher, in-house counsel for Equinix. Mr. Pletcher called me and I notified Mr. Carreon of the problem. On March 20th, Lombardo sent Mr. Pletcher another email, threatening to name Equinix in a lawsuit in Maryland for "massive copyright infringement" that would be determined in the "fourth circuit" would make more onerous by "adding a civil RICO count." (All emails submitted jointly as **Exhibit 1**.)

16. The long delay from mid - February until late March while I waited for Mr. Lombardo to file suit had cast a cloud over Global's future that I was eager to dispel, and Mr. Carreon proposed that an action for declaratory judgment would allow Global to be proactive with respect to ALS's claims. Mr. Lombardo's threat to sue Equinix affected my decision to file a declaratory relief suit in California. As explained above, Global's relationship with Equinix as the site provider for its California computers is what engineers call "mission critical."

17. Mr. Lombardo's threat to sue Equinix posed a severe threat to Global's total business operation specifically in California. The harm would also damage Global's business everywhere, as the company also uses Equinix colocation facilities in Virginia. With respect to the expense of defending Equinix against Global's claims, it made sense to seek to have that litigation in a forum that is convenient to Equinix.

I declare that the foregoing is true and correct under penalty of perjury of the laws of the United States and the State of California, and that this declaration was executed on July 11, 2003 at Frederick, Maryland.

                _____s/Ramsey Lamerson/s_____
                Ramsey Lamerson, Declarant

# DECLARATION OF KURT PLETCHER

Kurt Pletcher declares:

1. I am an attorney licensed to practice law in the State of California and Associate Counsel for Equinix, a publicly-traded Delaware corporation (Nasdaq: EQIX), with corporate offices in Foster City, California.  The matters stated herein are true of my personal knowledge, and based on an informed review of relevant documents.  If called as a witness, I could and would so competently testify.

2. I make this declaration to clarify Equinix's position with respect to the claims asserted by ALS Scan, Inc. ("ALS") concerning litigation in which Equinix is named, as discussed further below.

3. Equinix is the leading provider of network-neutral data centers and Internet exchange services for enterprises, content companies and network services providers.  Many of Equinix's customers are generally referred to as Internet Service Providers ("ISPs").

4. Global Innovations, Inc. ("Global") is one of Equinix's ISP customers.  Equinix provides colocation (space for Global's computers in a controlled environment), power, and related services for Global.  Equinix does not sell bandwidth to Global, and is not an upstream ISP for Global.  Equinix does not monitor or control Global's business operations and ISP activities. Equinix is not an agent for receipt of copyright infringement notices on behalf of Global.

5. Notwithstanding Equinix's non-involvement in Global's disposition of its ISP resources, Steve Easton and his co-defendant the Association for the Protection of Internet Copyright ("APIC"), acting as the agent for ALS, have sent many emails to my California office alleging infringements of photographic image copyrights from a plethora of "adult entertainment companies," including ALS.   Equinix also received emails from Robert Lombardo, house counsel for ALS, threatening to sue Equinix for RICO violations based on an asserted conspiracy with Global.

15

DECLARATIONS OF CHARLES CARREON, RAMSEY LAMERSON AND KURT PLETCHER
IN SUPPORT OF PLAINTIFFS' OPPOSITION TO DEFENDANTS' MOTIONS TO DISMISS

6. Mr. Lombardo has named Equinix as a defendant in a lawsuit filed in Maryland Federal District Court, Case No. 03-cv-1028 (the "Maryland action"), alleging infringement of ALS's copyrights in "adult" photographs.

7. Based on its contract with Global, Equinix has demanded a defense and indemnification from Global with respect to ALS's claims.

8. Currently, Equinix has filed no responsive pleadings in the Maryland action.

9. With respect to ALS's claims in the Maryland action, Equinix considers the action frivolous, and can assert meritorious defenses thereto; however, Equinix's witnesses having knowledge of the facts required to present its defenses live and work in California. Equinix has no files or records in Maryland pertinent to this matter, and it would be burdensome for Equinix to present its documents and witnesses in the Maryland forum.

10. While Equinix believes ALS's claims lack merit, if Equinix must defend against ALS's allegations, it would be most convenient for its witnesses, and least costly in terms of time and expense, to defend those claims in the herein action, Case No. 03-1277 JSW, currently pending in the United States District Court for the District of Northern California.

I declare that the foregoing is true and correct under the laws of the State of California and of the United States of America, and that this Declaration was executed at Foster City, California on July 12, 2003.

_____s/Kurt Pletcher/s_____
Kurt Pletcher, Declarant

DECLARATIONS OF CHARLES CARREON, RAMSEY LAMERSON AND KURT PLETCHER
IN SUPPORT OF PLAINTIFFS' OPPOSITITION TO DEFENDANTS' MOTIONS TO DISMISS