CHARLES CARREON (CSB # 127139)
ONLINE MEDIA LAW, PLLC
1131 Barrington Circle
Ashland, Oregon 97520
Tel:  541/482-2321
Fax: 541/482-4683

Attorneys for Plaintiffs
Global Innovations, Inc. and Ramsey Lamerson

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

GLOBAL INNOVATIONS, INC, a Maryland
corporation, and RAMSEY LAMERSON, an
individual,

                                    Plaintiffs,

            vs.

ALS Scan, Inc., a Maryland corporation,
WAYNE KIRN, an individual, APIC
WORLD-WIDE, INC., a Florida corporation,
and STEVE EASTON, an individual,

                                    Defendants.
_____

CASE NO: C 03-01277 JSW

PLAINTIFFS' REPLY MEMORANDUM IN
SUPPORT OF MOTION TO ENJOIN
PROSECUTION OF COMPULSORY
COUNTERCLAIM AS SEPARATE ACTION

DATE:  August 1, 2003
TIME:  9:00 a.m.
COURTROOM: 2, 17th Floor

## MEMORANDUM OF POINTS AND AUTHORITIES

### ARGUMENT

**1.   Defendants Have Shown No Cause To Abrogate the First-Filed Action Rule**

As the authorities cited in plaintiffs' moving papers established, F.R.C.P. 13 gives

primacy to the first-filed action that has proper jurisdiction over the controversy.  Defendants

have failed to establish any valid reason for giving "threats to litigate" priority over the actual

filing of litigation to adjudicate an existing case and controversy.  Defendants would have the

Court give greater weight to Mr. Lombardo's threats to file lawsuits than to plaintiffs' act of

placing the dispute before the Court for adjudication.  The first-filed action rule preserves order.

1

Any other rule leads to an atmosphere in which threatening to file suit is encouraged, and resorting to the courts is discouraged.  Filing suit, not mere bellicosity,  invokes the compulsory cross-claim rule and establishes priority of forum.  Those who wish to ply threats must know that at some point, the object of their threats may tire of the suspense, and seek an adjudication. Having tempted this result, ALS now seeks to escape it, but the dye is cast, this action has priority, and it should proceed.

**2.   The Plaintiff In A Properly Filed Action Is Entitled To Its Choice of Forum**

The Ninth Circuit has stated that, as a general proposition, the plaintiff is master of his or her complaint. *Sullivan v. First Affiliated Secs., Inc.,* 813 F.2d 1368, 1371 (9th Cir.), *cert. denied,* 484 U.S. 850, 108 S. Ct. 150, 98 L. Ed. 2d 106 (1987).  This rule generally applies to the plaintiff's decision to plead claims so as to invoke or avoid federal jurisdiction, a choice of forum issue.  Accordingly, it should apply here, where plaintiffs have chosen the venue based on their need to present a defense for Equinix, as has been made apparent by ALS's decision to sue Equinix in the Maryland action.  Plaintiffs chose this forum, the defendants are amenable to suit here, and the issues involve application of federal copyright law that this Court is as able to resolve as any other United States District Court.  Further, Equinix, which has no Maryland presence, is amenable to being joined in this action as part of ALS's compulsory counterclaims, if ALS desires to continue asserting that claim.

**3.   The Federal Courts Exist To Adjudicate Disputes Within Their Jurisdiction, Among All Litigants Properly Before Them, And Not For The Particular Benefit of The Residents of A Forum State**

It may seem self evident that the United States District Courts serve a function markedly different from that of the State courts, which are indeed intended for the benefit of its citizens. The Federal courts exist to maintain a relative uniformity in the interpretation of Federal statutes and the United States Constitution, and to provide a fair forum for the adjudication of disputes that arise among participants in our national economy.  Nowhere is this more evident that in the business of the Internet, where state borders shrink in significance, and revenues swell for companies like ALS that do business without regard to state borders.

4. **This Declaratory Relief Action Has Presented A Case and Controversy Since Day One, And Focuses On Federal Copyright Claims and Availability of the DMCA Safe Harbor Defense for Global and Equinix, A California Resident**

This case has presented a legitimate case and controversy ripe for resolution since the date of filing.  To refer to it pejoratively as an anticipatory lawsuit establishes no principle of significance, except to underline the fact that ALS had been threatening litigation for months, using spam emails from Mr. Lombardo, Steve Easton and APIC to harass plaintiffs' business associates, attempting to induce breaches of commercial relations.  The law does not require greater forbearance than plaintiffs have shown in waiting for litigation to be filed against them.  They have a right to a declaration that will resolve the matter with finality, they have sought it from this Court, and it is defendants, not plaintiffs, who seek to delay the adjudication that must come.

5. **ALS's Admission That It Sells 50,000 Website Memberships Yearly, At Least 12.5% Of Which Falls To California's Due, Amply Establishes This Court's Specific Jurisdiction Over The Person of the ALS Defendants**

The Sixth Circuit recently had occasion to consider the issue of when the volume of Internet sales will subject an Internet website-based business to specific jurisdiction in the forum state. In *Bird v. Parsons,* 289 F.3d 865 (6th Cir. 2000), Dotster, domain name registrar that registered domain names over the Internet, contested personal jurisdiction over it in a dispute involving a single Internet domain name it had registered.  *Bird,* 289 F.3d at 870.  Accepting as true plaintiff's allegation that Dotster had sold 4,666 registrations in the forum state (calculated as 2% of Dotster's total US registrations), the Sixth Circuit reversed the district court's finding that personal jurisdiction was lacking over Dotster.  *Bird,* at 876.  That number of registrations ring in at about $9 per registration (Dotster is a "discount registrar"), for total revenue of $41,994.  The Sixth Circuit said:

> "The operation of an Internet website can constitute the purposeful availment of
> the privilege of acting in a forum state … "if the website is interactive to a degree
> that reveals specifically intended interaction with residents of the state."

3

1   [Citations]  We conclude that by maintaining a website on which Ohio residents

2   can register domain names and by allegedly accepting the business of 4,666 Ohio

3   residents, the Dotster defendants have satisfied he purposeful-availment

4   requirement."

5   *Bird,* 289 F.3d at 874.

6          Further, the *Bird* opinion dispenses with the idea that such an exercise of jurisdiction

7   would be unreasonable:  "Though the Dotster defendants might face a burden in having to

8   defend a lawsuit in Ohio, they cannot reasonably object to this burden given that Dotster has

9   allegedly transacted business with 4,666 Ohio residents."  *Bird,* 289 F.3d at 875.

10         Applying the *Bird* principles to this case, it is clear that the ALS defendants are subject to

11  jurisdiction here.  In year 2000 one in eight Americans lived in California, comprising 12.5% of

12  the national population.  If we assume that other Americans are equally as "plugged in" to the

13  Internet as are Californians,[1] then California residents purchase at least 6,250 ALS website

14  memberships yearly, at $19.99 each, for total ALS California website revenue of $124,937.50.

15  As the Sixth Circuit concluded correctly, website sales to forum state residents establish

16  purposeful availment with respect to all other dealings involving the intellectual property that is

17  generating these revenues, be they domain names or pornographic pictures.  Furthermore, the

18  connection between the forum state contacts and the dispute "does not require that the cause of

19  action formally 'arise from' defendant's contacts with the forum; rather … the cause of action, of

20  whatever type, [must have] a substantial connection with the defendant's in-state activities."

21  *Bird,* 289 F.3d at 874.  Thus, the Dotster defendants (including the Dotster principal) were

22  subject to personal jurisdiction because the "operative facts [were] at least marginally related to

23  the alleged contacts between the Dotster defendants and [the forum state]."  *Bird,* 289 F.3d at

24  875.

25         Since the issue of whether ALS is overreaching in enforcing those the intellectual

26  property rights within this Court's territorial jurisdiction are precisely what is at issue in this

27

28  _____

[1] An unsupportable assumption, but sufficient for our purposes.

PLAINTIFFS' REPLY MEMORANDUM IN SUPPORT OF MOTION TO ENJOIN PROSECUTION
OF COMPULSORY COUNTERCLAIM AS SEPARATE ACTION

case, ALS's sales volume in California is abundantly sufficient to establish that it is subject to specific jurisdiction in this case.

6. **Conclusion**

For all of the above reasons, the Court is respectfully requested to enjoin defendant ALS Scans, Inc. from continuing to prosecute the Maryland action, and to require any claims assertable against Global and Equinix to proceed as compulsory cross-claims in this action.

Dated:  July 19, 2003                    ONLINE MEDIA LAW, PLLC

By: _____s/Charles Carreon/s_____
CHARLES CARREON, CSB #127139
Attorney for Plaintiffs

5